In re the MARRIAGE OF Nena
M. SWING, Appellant,

and

Dick Stuva, Appellee.

No. 07CA1269.

Colorado Court of Appeals,
Div. VI.

Sept. 4, 2008.

John F. Davis, Greeley, Colorado, for Appellant.

John D. Stehilk, Greeley, Colorado, for Appellee.

Opinion by Judge WEBB.

In this post-dissolution of marriage proceeding, Nena M. Swing (wife) appeals from orders reducing the maintenance obligation of Dick Stuva (husband) based on his having taken a lower-paying job in anticipation of imminent retirement. We conclude that the job change did not constitute voluntary underemployment, and therefore we affirm.

When the marriage was dissolved in 2005, husband, an "over the road" or long-haul truck driver, was ordered to pay maintenance of $242 per week to wife. In 2006, anticipating retirement within a year at age sixty-five, he took a new job as a local truck driver at a lower wage. After hearing the testimony of both parties and other witnesses, the magistrate reduced husband's maintenance obligation proportionally to the lower wage. The district court adopted the magistrate's order, which wife now appeals.

## I. Correct Standard

Wife first contends the magistrate was misled by a change in the wording of the statute, and as a result applied the wrong standard when determining whether maintenance should be modified under section 14–10–122(1)(a), C.R.S.2007. We disagree.

Before July 1, 1993, section 14–10–122(1)(a) provided that the provisions of a decree respecting maintenance could be modified "only upon a showing of changed circumstances so substantial and continuing as to make the terms [of the decree] unconscionable." Effective July 1, 1993, the term "unfair" was substituted for "unconscionable." Ch. 270, sec. 2, § 14–10–122, 1993 Colo. Sess. Laws 1557.

Colorado courts construing the term "unconscionable" in the former version of section 14–10–122(1)(a) have held that unconscionability "is measured by the 'fair, reasonable, and just' standard." *See, e.g., In re Marriage of Dixon,* 683 P.2d 803, 804 (Colo.App. 1983) (citing *In re Marriage of Carney,* 631 P.2d 1173, 1175 (Colo.App.1981), and concluding that the court did not abuse its discretion in terminating maintenance where the "precipitous" decline in husband's income called into question the fairness of the maintenance requirement).

Here, the magistrate made extensive findings on the financial circumstances of both parties and found that wife was unable to meet her minimal needs without maintenance. The magistrate further found that husband's decision to take the local job, which would allow him to maintain a "more normal lifestyle" as he approached retirement, was a substantial and continuing change of circumstances. She recognized that the change benefited husband rather than wife, but concluded nevertheless that because payments of $242 per week to wife

would consume 43.7 percent of husband's gross income from his new job, requiring him to continue paying at that level would render the original maintenance order unfair. The magistrate also noted that under the original order, husband had been required to pay wife 24.2 percent of his gross income, and determined that in light of husband's changed circumstances, requiring him to pay wife 24.2 percent of his current gross income would be fair.

We conclude that the magistrate applied the correct standard under section 14–10–122(1)(a).

## II. Voluntary Underemployment

Wife next contends the magistrate erred in failing to find that husband was voluntarily underemployed. We disagree.

### A. Child Support Analogy

Wife's reliance on *Rapson v. Rapson,* 165 Colo. 188, 437 P.2d 780 (1968), a child support case, to argue that the magistrate erred in applying a "good faith" standard to husband's motive for changing jobs, is misplaced.

In *Rapson,* the supreme court held that the husband's lack of profitable employment did not show that the allowance of child support was an abuse of discretion where "nothing but a disinclination to work, regardless of the motive therefor, interferes with [the obligor's] ability to earn a reasonable living." *Rapson,* 165 Colo. at 192, 437 P.2d at 782. The court explained that the husband's decision to cease employment and return to college, "though most understandable," did not preclude an award of child support based upon his "demonstrated earning capacity." *Id.*

■ For the purpose of determining child support, a party may be deemed voluntarily underemployed, and thus, a higher income may be imputed, if the party shirks a child support obligation by unreasonably foregoing higher paying employment that could be obtained. *See, e.g., People v. Martinez,* 70 P.3d 474, 479 (Colo.2003).

After *Rapson* was decided, the General Assembly enacted section 14–10–115(7)(b)(III), now codified as section 14–10–115(5)(b)(III), C.R.S.2007, which sets forth several circumstances in which a parent shall not be deemed underemployed for the purpose of determining child support. Ch. 38, sec. 1, § 14–10–115, 1991 Colo. Sess. Laws 236 (adding sections 14–10–115(7)(b)(III)(A) and (B)); ch. 266, sec. 5, § 14–10–115, 1994 Colo. Sess. Laws 1538 (adding section 14–10–115(7)(b)(III)(C)). One circumstance is a parent's "good faith career choice." § 14–10–115(5)(b)(III)(B), C.R.S.2007.

Whether child support law should be applied by analogy in deciding to modify maintenance is questionable. "[T]he obligation to pay support to a former spouse is different from the obligation to pay child support." *Pimm v. Pimm,* 601 So.2d 534, 537 (Fla. 1992). But even if so, we conclude that current Colorado support law did not preclude the magistrate from considering husband's good faith in changing jobs.

### B. Maintenance and Retirement

■ A court may consider whether an obligor spouse is voluntarily underemployed in determining whether reduced income is a substantial and continuing circumstance that would justify modification or termination of his maintenance obligation. *See In re Marriage of Bowles,* 916 P.2d 615, 618 (Colo.App. 1995). The General Assembly has not provided specific criteria to determine when a spouse may be deemed voluntarily underemployed for the purpose of maintenance. The parties have cited no Colorado case, nor have we found one, addressing whether a job change in anticipation of or in connection with retirement constitutes voluntary unemployment or underemployment for the purpose of modifying maintenance.

Unless the effect of retirement on maintenance has been addressed in the parties' separation agreement, a spouse contemplating retirement who is either paying or receiving maintenance faces considerable uncertainty. A decision to retire will often irrevocably reduce income. But under Colorado law, the retiree has no assurance that maintenance will be modified based on the retiree's lower wage income, especially

given the considerable discretion involved in modifying maintenance. *See, e.g., In re Marriage of Ward*, 740 P.2d 18, 20 (Colo. 1987). To reduce this uncertainty, we look to criteria applied in other jurisdictions.

The majority rule appears to be that reduced income due to a spouse's objectively reasonable decision to retire, made in good faith and not with the intention of depriving the other spouse of support, should be recognized as a basis for modifying maintenance. *See, e.g., In re Marriage of Richards*, 472 N.W.2d 162, 165 (Minn.Ct.App.1991) ("[W]hen an obligee raises a colorable claim of bad faith, an obligor must show by a preponderance of the evidence that a decision to retire early was not primarily influenced by a specific intent to decrease or terminate maintenance.... In determining this issue, the trial court should consider the obligor's health and employment history, the availability of and expectations regarding early retirement at the time of the divorce, and the prevailing managerial policies and economic conditions at the time of retirement, together with whatever subjective reasons the obligor may offer."); *In re Arvenitis*, 152 N.H. 653, 886 A.2d 1025, 1029 (2005) (in determining whether a voluntary retirement is reasonable, the court must consider the payor's age, health, and motivation for retirement, as well as the type of work the payor performs and the age at which others engaged in that line of work normally retire); *Ebach v. Ebach*, 700 N.W.2d 684, 689 (N.D. 2005) (in analyzing whether a voluntary retirement constitutes a changed circumstance that would justify a modification of spousal support, the court may consider a variety of factors, including whether retirement was contemplated at the time of the initial award, the financial impact of the retirement on the respective financial positions of the parties, and whether the decision to retire was reasonable under all the circumstances or whether it was motivated primarily by a desire to reduce the support available to the former spouse); *Bogan v. Bogan*, 60 S.W.3d 721, 729 (Tenn.2001) (when an obligor's retirement is objectively reasonable, a determination which is to be made by the trial court after consideration of the totality of the circumstances surrounding the retirement, it

constitutes a substantial and material change of circumstances sufficient to modify maintenance). *See generally* Jane Massey Draper, Annotation, *Retirement of Husband as Change of Circumstances Warranting Modification of Divorce Degree—Prospective Retirement*, 110 A.L.R.5th 237 (2003).

■ Based on these cases, we conclude that a Colorado court may consider an obligor spouse's reduced income as a result of early retirement, and that if the court finds (1) the obligor's decision was made in good faith, meaning not primarily motivated by a desire to decrease or eliminate maintenance, and (2) the decision was objectively reasonable based on factors such as the obligor's age, the obligor's health, and the practice of the industry in which the obligor was employed, the court should not find the obligor to be voluntarily underemployed. Nothing in section 14–10–122(1)(a) precludes this approach. A similar analysis would apply if an obligee spouse took early retirement and sought to increase maintenance on this basis.

We note, however, that these cases all involve retirement before age sixty-five. "The age of sixty-five years has become the traditional and presumptive age of retirement for American workers...." *Pimm*, 601 So.2d at 537. One court has recognized an "ordinary right to retire from active work at age [sixty-five]." *Terjersen v. Terjersen*, 420 So.2d 704, 706 (La.Ct.App.1982). Here, because husband took the lower paying job shortly before age sixty-five, we leave for another day whether a more limited inquiry into good faith and objective reasonableness should be applied to a job change at the earlier of age sixty-five or the normal retirement date in the relevant industry.

■ Husband testified that he was about to turn sixty-five, and that he had taken the local truck driving job because he wanted to have some weekends free and have a social life, and because he did not want to "live in a truck" for up to eighty hours per week, which he could not do any more. He indicated that he might continue to work in his local job after he reached the age of sixty-five if he could do so on a "casual" or less than full-time basis. Wife did not argue below nor

does she assert on appeal that husband was motivated by a specific intent to decrease maintenance. The magistrate found that husband no longer had the stamina necessary for the life of an over-the-road truck driver, and that his decision to step down to a slower pace as he approached retirement was "only a reflection of the reality of his age and stage in life."

Accordingly, we perceive no error in the magistrate's holding that husband's career change was not made in bad faith, and thus he should not be deemed voluntarily underemployed.

### III. Sole Benefit to Husband

■ Nevertheless, wife further contends that because only husband derived any benefit from the less demanding and lower paying local job, the magistrate abused her discretion in determining that the loss of income resulting from that decision justified modifying maintenance. We are not persuaded.

Under section 14–10–122(1)(a), the court must consider the interests of both parties in determining whether the maintenance established in the original order has become unfair as a result of a change in the parties' circumstances. However, section 14–10–122(1)(a) does not preclude an obligor from making a decision that serves the obligor's own interests, nor does it require that modification be denied solely because the obligor's decision disadvantages the obligee by reducing ability to pay maintenance.

We agree with the magistrate's statement that:

> It is always a fact that at some time in the future a gainfully employed obligor, if lucky enough to live a healthy and long life, will retire, either all at once, or gradually. In those circumstances, as here, the law anticipates modification of maintenance if the original terms are rendered unfair.

See Bogan, 60 S.W.3d at 733–34 ("[R]etirement is simply not like other forms of voluntary underemployment. Because retirement is somewhat of an entitlement, the foreseeability or voluntariness of the retirement decision does not affect the support modifica-

tion analysis, and the weight given to various considerations is not precisely the same as that given under different circumstances.").

Accordingly, we are satisfied that the magistrate's decision was not unfair or unreasonable, and thus, not an abuse of discretion. See In re Marriage of Page, 70 P.3d 579, 581 (Colo.App.2003) (a trial court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner).

### IV. Continuing Circumstances

■ Finally, we reject wife's contention that the magistrate abused her discretion in determining that husband's new employment is a "continuing circumstance" rather than a temporary situation.

Whether husband's new employment is a continuing circumstance is a question of fact requiring consideration of his intent and his actions. Here, husband testified that his previous employment was "a thing of [his] past" and that he did not plan ever to return to an over-the-road truck driving position. He stated that he had notified his previous employer that he was no longer available for assignments. Because the record supports the magistrate's finding, we may not disturb it. See In re Marriage of Udis, 780 P.2d 499, 504 (Colo.1989) (when a trial court's order is supported by competent evidence, it should not be disturbed on review).

The district court's order of May 22, 2007, adopting the magistrate's order of October 18, 2006, is affirmed.

Judge LOEB and Judge GABRIEL concur.