The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
January 24, 2019

**2019COA13**

**No. 17CA2293, *Marriage of Thorstad* — Family Law — Uniform
Dissolution of Marriage Act — Post-dissolution — Modification
and Termination of Provisions for Maintenance, Support, and
Property Disposition**

A division of the court of appeals addresses the issue of how

trial courts should apply section 14-10-122(2)(a), (b), and (c),

C.R.S. 2018, when deciding whether to modify a payor spouse's

maintenance obligation because he or she has decided to retire

from employment.  These subsections establish a rebuttable

presumption that a decision to retire was made in good faith when

certain conditions are met.

The division then concludes that, absent a court's decision to

reserve jurisdiction, the parties' stipulation in a separation

agreement to apply a different standard, or a statute enunciating a

different standard, a court must apply section 14-10-122(1)(a) when

deciding whether to grant a payor's motion to modify or to terminate maintenance. When a motion to modify or terminate maintenance is based on a payor's decision to retire, the court must therefore decide, considering the factors discussed in section 14-10-114, C.R.S. 2018, whether circumstances have changed in such a sufficient and continuing way as to render the maintenance order unfair.

In other words, the payor's good faith decision to retire is a factor in the analysis, but it does not automatically require the court to grant the motion to modify or to terminate a maintenance obligation.

So, the division reverses the trial court's order because it misapplied subsections 122(2)(a), (b), and (c), and the division remands the case to the trial court for further proceedings.

Court of Appeals No. 17CA2293
Jefferson County District Court No. 01DR2710
Honorable Dennis J. Hall, Judge

In re the Marriage of

Ronald L. Thorstad,

Appellee,

and

Randie J. Thorstad, n/k/a Randie J. Randell,

Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by CHIEF JUDGE BERNARD
Hawthorne and Tow, JJ., concur

Announced January 24, 2019

Elizabeth Henson, Attorney Mediator P.C., Elizabeth Henson, Greenwood Village, Colorado, for Appellee

Schaffner Law LLC, Jennifer A. Schaffner, Denver, Colorado, for Appellant

## I. Introduction

¶ 1    Colorado statutes establish how courts set, modify, and terminate maintenance orders. The decision to modify or to terminate a maintenance order is often governed by the effect of changed circumstances on the payor spouse's ability to pay.

¶ 2    More specifically, section 14-10-122(1)(a), C.R.S. 2018, states that, subject to certain enumerated exceptions, "the provisions of any decree respecting maintenance may be modified . . . only upon a showing of changed circumstances so substantial and continuing as to make the terms unfair." When deciding whether changes have been sufficiently substantial and continuing as to render a maintenance order unfair, "the court is required to examine all circumstances pertinent to awarding maintenance" under section 14-10-114, C.R.S. 2018. *In re Marriage of Nelson*, 2012 COA 205, ¶ 26.

¶ 3    This case examines the statutory structure that courts apply when dealing with the effect of one potential substantial and continuing changed circumstance upon a maintenance order: a payor's decision to retire. We recognize that, in some cases, there could be an ulterior motive behind this decision: to reduce or to

eliminate the obligation to pay maintenance by reducing or eliminating the payor's income. The law gives a name to such an ulterior motive: "voluntary underemployment or unemployment."

¶ 4 Courts frown on voluntary underemployment and unemployment because these stratagems constitute an attempt to avoid paying maintenance. They may counter such stratagems by, for example, considering "whether [a payor] spouse is voluntarily underemployed in determining whether reduced income is a substantial and continuing circumstance that would justify modification or termination of his [or her] maintenance obligation." *In re Marriage of Swing*, 194 P.3d 498, 500 (Colo. App. 2008); *see also In re Marriage of Barnthouse*, 765 P.2d 610, 613 (Colo. App. 1988)("[W]e find no error in the court's [finding] that the father . . . was voluntarily earning less than he was capable of earning. Therefore, there is no merit to the father's contention that the . . . maintenance award[] [was] erroneous.").

¶ 5 There is also the prospect that a payor's decision to retire was not the product of an ulterior motive, but was, instead, a product of good faith. *See* § 14-10-114(8)(c)(V)(B) ("[A] party shall not be deemed 'underemployed if . . . [t]he employment is a good faith

2

career choice . . . ."); *cf.* § 14-10-115(5)(b)(III)(B), C.R.S. 2018 ("[A] parent shall not be deemed 'underemployed' if . . . [t]he employment is a good faith career choice that is not intended to deprive a child of support and does not unreasonably reduce the support available to a child . . . ."). In those situations, the decision to retire may nonetheless pose a dilemma for the payor — which we shall call the "payor's dilemma" — prompting him or her to worry, "If I decide to retire, thus reducing my income, will a court view my retirement as voluntary underemployment or unemployment when deciding whether to grant my motion to modify or to terminate my maintenance obligation?" This dilemma may be especially problematic when decisions to retire are irrevocable.

¶ 6 *Swing* addressed this concern. The division first recognized the payor's dilemma: "Unless the effect of retirement on maintenance has been addressed in the parties' separation agreement, a spouse contemplating retirement who is either paying or receiving maintenance faces considerable uncertainty." *Swing*, 194 P.3d at 500. The uncertainty is generated, on the one hand, by the reduction in income that almost "irrevocably" accompanies retirement, and, on the other hand, by the lack of Colorado law

"assur[ing] that maintenance will be modified based on the retiree's lower wage income." *Id.*

¶ 7    To ameliorate the payor's dilemma, the division surveyed decisions from other states, and it discovered a majority rule: "[R]educed income due to a spouse's objectively reasonable decision to retire, made in good faith and not with the intention of depriving the other spouse of support, should be recognized as a basis for modifying maintenance." *Id.* at 501.  The division then concluded that a court should not find a payor to be voluntarily underemployed if the payor's decision to retire (1) "was made in good faith, meaning not primarily motivated by a desire to decrease or eliminate maintenance," *id.*; and (2) "was objectively reasonable based on factors such as the [spouse's] age . . . [and] health, and the practice of the industry in which the [spouse] was employed," *id.*

¶ 8    Apparently following the division's lead, the legislature took a similar approach to solving the payor's dilemma when, in 2013, it amended section 14-10-122(2)(a), (b), and (c).  Ch. 176, sec. 2, § 14-10-122(2)(a), (b), (c), 2013 Colo. Sess. Laws 652.

4

¶ 9    As a result of the amendments, subsection 122(2)(a) now states that,

> [u]nless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the earlier of:
>
> (I) The death of either party;
>
> (II) The end of the maintenance term, unless a motion for modification is filed prior to the expiration of the term;
>
> (III) The remarriage of or the establishment of a civil union by the party receiving maintenance; or
>
> (IV) A court order terminating maintenance.

¶ 10    Subsection 122(2)(b) adds that "[a] payor spouse whose income is reduced or terminated due to his or her retirement after reaching full retirement age is entitled to a rebuttable presumption that the retirement is in good faith."  Subsection 122(2)(c) defines the term "full retirement age" to be "the payor's usual or ordinary retirement age when he or she would be eligible for full United States social security benefits, regardless of whether he or she is ineligible for social security benefits for some reason other than attaining full retirement age."  But, according to subsection 122(2)(c), "'[f]ull retirement age' shall not mean 'early retirement age'

if early retirement is available to the payor spouse, nor shall it mean 'maximum benefit retirement age' if additional benefits are available as a result of delayed retirement."

¶ 11     We must next make a point about the statutes that we consider in this appeal. In 2013, section 14-10-114 was repealed and reenacted. Ch. 176, sec. 1, 14-10-114, 2013 Colo. Sess. Laws 639-52. The considerations relevant to determining maintenance in this case used to appear in subsections (3) and (4) before the 2013 amendments, but they now appear in subsection (3).

¶ 12     The petition for dissolution of marriage in this case was filed on September 17, 2001, so the new version of section 14-10-114 applicable to petitions filed on or after January 1, 2014, does not apply. *See* § 14-10-114(9). Rather, "[a]ctions filed before January 1, 2014, are determined pursuant to the provisions of this section as it existed at the time of the filing of the action." *Id.* This means that from this point on, unless otherwise noted, when we refer to any of the subsections of section 14-10-114, we are referring to those that existed in September 2001.

¶ 13     Section 14-10-122 does not contain similar language. So, when we discuss any of the subsections of section 14-10-122, we

are concerned with those in existence when husband filed his motion to terminate his maintenance obligation in May 2017.

¶ 14    Turning to this case, a former husband, Ronald L. Thorstad, suffered from some health problems, which contributed to his decision to retire from his job. He therefore asked a magistrate to terminate his maintenance obligation to his former wife, Randie J. Thorstad, who is now known as Randie J. Randell. (For readability purposes, we shall dispense with the adjective "former" and simply call the parties to this appeal "husband" and "wife.") The magistrate granted husband's request; wife sought the district court's review; and the district court denied her petition. (Because the district court denied wife's petition, essentially affirming the magistrate's decision, we will refer to the district court and the magistrate cumulatively as "the trial court" unless we need to make a specific point about either one.)

¶ 15    Wife filed this appeal.

¶ 16    We conclude that the magistrate's order, as affirmed by the district court, partially misapplied subsections 122(2)(a), (b), and (c). We therefore reverse the court's order, and we remand the case

for further proceedings, including ruling on wife's request for appellate attorney fees under section 14-10-119, C.R.S. 2018.

## II. Background

¶ 17 The decree in this case dissolved the marriage between husband and wife in May 2002. Their separation agreement included a "step down" schedule for husband's maintenance obligation to wife, meaning that the amount husband paid decreased over time. He was paying wife $3000 per month when he asked the trial court to terminate his maintenance obligation.

¶ 18 In the separation agreement, husband and wife agreed that the trial court would have jurisdiction to modify the amount of maintenance if wife's medical condition worsened or if her medical costs substantially increased. The agreement contained the following succession of sentences:

- "Maintenance shall be subject to review and modification by the [c]ourt under [section 14-10-114], without the requirement of proving a substantial and continuing change of circumstances making the existing [o]rder unfair."

- Husband and wife "have assumed . . . that wife will be able to work full-time without disability from her [medical condition], and that husband will retire completely from paid employment on or before he reaches age sixty."

- Husband and wife "understand that a worsening of . . . wife's [medical condition] which interferes with her ability to work full time, or a substantial increase in the wife's medical costs, will require a re-evaluation of maintenance in connection to . . . wife's needs."

¶ 19     These sentences do not include any reference to the termination of maintenance, and they do not refer to section 14-10-122 at all, let alone to subsections 122(2)(a), (b), or (c). Indeed, they could not refer to those subsections because they did not exist in their present form when husband and wife entered into their separation agreement.

¶ 20     In May 2017, relying on subsections 122(2)(a), (b), and (c), husband asked the magistrate to terminate his maintenance obligation, alleging that he intended to retire and that his health had deteriorated. The magistrate granted this request.

¶ 21    Unbeknownst to the magistrate, wife had filed a response to husband's motion to terminate maintenance after the time for responding had lapsed. She did not ask for the magistrate's permission to do so. The response asked the court to deny husband's request to terminate his maintenance obligation and that the court take a "wider view" of subsections 122(2)(a), (b), and (c) and section 14-10-114.

¶ 22    The magistrate granted husband's motion without a hearing before wife's response reached the court's electronic filing system.

¶ 23    Employing C.R.M. 7(a), wife then filed a petition that asked the district court to review the magistrate's order. She raised two points: first, it was unclear from the magistrate's order whether husband had relied on the proper statute when he asked the magistrate to terminate his maintenance obligation; and, second, the magistrate erred when he granted husband's motion without considering her response.

¶ 24    Wife contended that section 14-10-114 governed husband's request to terminate maintenance, instead of subsections 122(2)(a), (b), and (c), because the court had reserved jurisdiction to modify maintenance by approving the parties' separation agreement. She

also observed that the district court had determined, during prior modification proceedings in this case, that section 14-10-114 governed its decision to modify maintenance.

¶ 25     Although the magistrate did not have wife's response prior to ruling on husband's motion, the district court noted in its order that it had taken her response into account when ruling on her C.R.M. 7(a) petition.  The district court, rejecting wife's contentions, denied her petition.

### III.    Standard of Review

¶ 26     A district court's review of a magistrate's order is like appellate review, and the magistrate's findings of fact cannot be altered unless clearly erroneous.  C.R.M. 7(a)(9); *In re Parental Responsibilities Concerning G.E.R.*, 264 P.3d 637, 638-39 (Colo. App. 2011).  Our review of the district court's decision is effectively a second level of appellate review, and we apply the same clearly erroneous standard.  *In re Marriage of Dean*, 2017 COA 51, ¶ 8; *G.E.R.*, 264 P.3d at 639.

¶ 27     We review a district court's order modifying maintenance for an abuse of discretion.  *In re Marriage of Ward*, 740 P.2d 18, 21 (Colo. 1987).  However, we review de novo whether the district court

applied the correct legal standard. *In re Marriage of Atencio*, 47 P.3d 718, 720 (Colo. App. 2002).

IV. Wife's Contentions and Our Conclusions

¶ 28     Wife raises three contentions. She asserts that the trial court erred when it

1. relied on section 14-10-122 instead of section 14-10-114 in the course of granting husband's motion to terminate his maintenance obligation;

2. terminated husband's maintenance obligation without making sufficient factual findings; and

3. treated husband's motion as confessed even though wife had submitted an untimely response.

¶ 29     Addressing these contentions, we reach the following conclusions, which we will explain below in detail.

- The question of what statute applies to resolve husband's motion is one of law, which we review de novo. *See Atencio,* 47 P.3d at 720.

- Section 14-10-122 was the right statute for the trial court to use when deciding whether to grant husband's motion. But a court cannot *automatically* terminate a

12

maintenance obligation under subsection 122(2)(a)(IV) if a payor satisfies the retirement provisions found in subsections 122(2)(b) and (c). Rather, a payor's good faith retirement simply becomes a factor for the court to consider in the analysis of whether, under subsection 122(1)(a), the payor can show that there has been a substantial and continuing change of circumstances that makes the existing maintenance order unfair.

- A court can, in specified circumstances, reserve jurisdiction over a maintenance order. But husband and wife's separation agreement in this case, which the court had approved, did not reserve jurisdiction over the question of what effect husband's retirement would have on his maintenance obligation. So the separation agreement did not require the trial court to use section 14-10-114 to resolve husband's motion instead of subsections 122(1)(a), (2)(a), (2)(b), and (2)(c).

- We do not need to address wife's assertion that the trial court erred when it decided that wife had confessed husband's motion.

## V. Analysis

### A. The Decision to Award Maintenance

¶ 30     In 2001, before a court could award maintenance, section 14-10-114(3) required the court to "make a threshold determination that the requesting spouse lacks sufficient property, including marital property, to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment." *In re Marriage of Rose*, 134 P.3d 559, 561 (Colo. App. 2006).  Once the court found that this statutory threshold had been satisfied, it would turn to section 14-10-114(4) to figure out the amount and duration of maintenance.  To do so, it would consider "the parties' financial resources; the recipient's need for education or training; the standard of living established during the marriage; the age and condition, both physical and emotional, of the recipient; and the payor spouse's ability to meet his or her own needs while meeting those of the recipient." *Rose*, 134 P.3d at 561.

### B. Incorporating a Payor's Retirement into the Decision to Modify Maintenance

¶ 31     Based upon the relevant facts and law, we ask and answer three questions concerning how the 2001 version of section

14-10-114(3) and (4) and subsection 122(1)(a) interact with subsections 122(2)(a), (b), and (c) for the purposes of resolving this appeal.

¶ 32    *Do Subsections 122(2)(a), (b), and (c) Create a Reason — Good Faith Retirement — That Automatically Terminates a Payor's Duty to Pay Maintenance?*

¶ 33    We answer this question "no."

¶ 34    To remind the reader, when discussing retirement, subsection 122(2)(b) creates a "rebuttable presumption" that a payor who retires "after reaching full retirement age" has retired in "good faith." Subsection 122(2)(c) adds a definition of "full retirement age."

¶ 35    "[W]e 'must read and consider the statutory scheme as a whole to give consistent, harmonious[,] and sensible effect to all its parts.'" *People v. Stellabotte*, 2018 CO 66, ¶ 32 (quoting *Martin v. People*, 27 P.3d 846, 851 (Colo. 2001)). When we look at the entirety of subsection 122(2), we see that it deals with the decision to terminate "the obligation to pay future maintenance." A court therefore considers the rebuttable presumption found in subsection 122(2)(b) when deciding to terminate the obligation.

¶ 36     But it is also clear from the statutory language that this rebuttable presumption is not conclusive on the question of whether the court should terminate the payor's maintenance obligation.  Subsection 122 does *not* state that the court "shall" or "must" terminate a payor's maintenance obligation if the payor establishes that he or she is entitled to the rebuttable presumption.

¶ 37     Because the presumption is rebuttable, the spouse who is receiving maintenance must have the opportunity to rebut the presumption.  "Rebuttable presumptions have a limited purpose." *Krueger v. Ary,* 205 P.3d 1150, 1154 (Colo. 2009).  They "(1) shift[] the burden of going forward to the party against whom it is raised, and (2) if that burden is not met, establish[] the presumed facts as a matter of law." *Id.*

¶ 38     Once the payor satisfies the rebuttable presumption created by subsection 122(2)(b), the presumption shifts the burden of going forward to the recipient to show that the payor's decision to retire was not made in good faith.  If the recipient does not meet this burden, then the court will presume, as a matter of law, that the payor's decision to retire was made in good faith.  Looking to *Swing,* we see that "good faith" means that the retirement decision was not

16

affected by the ulterior motive of voluntary unemployment or underemployment, as a means to reduce or eliminate a maintenance obligation. 194 P.3d at 501.

¶ 39    *Do Subsections 122(2)(a), (b), and (c) Merely Set Out a Factor — Good Faith Retirement — That a Court Must Consider When Deciding, Under Subsection 122(1)(a), Whether Circumstances Have Changed in Such a Substantial and Continuing Way as to Make the Terms of the Existing Maintenance Order Unfair?*

¶ 40    Looking at the language of these subsections together, we conclude that the answer to this second question is *generally* "yes."

¶ 41    As we point out above, subsection 122(1)(a) tells courts that, when deciding whether to modify a maintenance order, they must decide whether circumstances have changed in such a substantial and continuing way as to make the existing terms of the maintenance order unfair. A payor's decision to retire could, indeed, be such a factor. But it is only one factor among potentially many because "the court must examine all circumstances pertinent to an initial maintenance award, including all relevant circumstances of both parties" under the 2001 version of section 14-10-114(4). *In re Marriage of Kann*, 2017 COA 94, ¶ 73; *Nelson,*

17

¶ 26.  (When addressing this issue for cases filed after the 2013 amendments, courts should look to section 14-10-114(3).)

¶ 42    To determine if the parties' changed circumstances warrant modification, the court must examine them as if it were awarding maintenance for the first time under section 14-10-114.  *Nelson,* ¶ 26.  The party seeking to modify maintenance carries a heavy burden of showing that the changed circumstances warrant modification.  *Kann,* ¶ 74.  If that party makes the required showing, it is within the court's discretion to modify the maintenance order to meet the needs and abilities of the parties.  *Ward,* 740 P.2d at 20; *Nelson,* ¶ 28.

¶ 43    In other words, if a payor asks a court to modify or to terminate a maintenance obligation because he or she intends to retire, then the court should follow a general rule.  First, applying subsections 122(b) and (c), it should decide whether the payor's decision to retire was made in good faith.  Second, it should then incorporate its findings concerning the payor's decision to retire as one of the factors to consider in deciding whether, under subsection 122(1)(a), circumstances have changed in such a substantial and continuing way as to make the original order unfair.  In doing so, it

18

must also consider the factors listed in the 2001 version of section 14-10-114(3) and (4).

¶ 44    We therefore conclude that the trial court erred because it did not apply the general rule in this case. Its order treated husband's good faith decision to retire as conclusive in resolving his motion to terminate maintenance. The order did not address the subsection 122(1)(a) question of whether husband's retirement and declining health were continuing and substantial changed circumstances that rendered his maintenance obligation unfair. And it did not consider husband's and wife's needs and abilities, as required by the 2001 version of section 14-10-114(3) and (4). *See Nelson,* ¶¶ 26, 28; *Swing,* 194 P.3d at 499 (observing that the magistrate made extensive findings on the parties' financial circumstances before modifying maintenance); *Rose,* 134 P.3d at 561; *In re Marriage of Caufman,* 829 P.2d 501, 502 (Colo. App. 1992).

¶ 45    We reverse the trial court's order and remand this case to the court because of this error. On remand, the court shall consider husband's good faith retirement as a factor in deciding whether, under subsection 122(1)(a), circumstances have changed in such a substantial and continuing way as to make the existing terms of

19

husband's maintenance obligation unfair. While doing so, the court shall consider the factors found in the 2001 version of section 14-10-114(3) and (4) concerning husband's and wife's needs and abilities.

¶ 46    *What Happens to This General Rule If a Separation Agreement Reserves Jurisdiction?*

¶ 47    We conclude that such language *might* establish an exception to the general rule. But the boundaries of the exception are established by the specific language of the separation agreement. And, in this case, the separation agreement did not reserve jurisdiction for the trial court to consider husband's decision to retire or his declining health.

¶ 48    If, at the time of permanent orders, an important future contingency exists that a court can resolve in a reasonable and specific time, the court may reserve jurisdiction to modify maintenance under section 14-10-114. *In re Marriage of Folwell*, 910 P.2d 91, 93 (Colo. App. 1995). To do so, the court must (1) explicitly state its intent to reserve jurisdiction; (2) describe the future event upon which the reservation of jurisdiction is based; and (3) set forth a reasonably specific future time within which

maintenance may be considered under section 14-10-114. *Folwell,* 910 P.2d at 93.

¶ 49 If the court does not properly reserve jurisdiction, it can only modify maintenance under the parameters set out under subsection 122(1)(a). *See id.* "[I]f the . . . court merely reserves jurisdiction for modification 'as provided by law,' or fails to establish a legal standard in its order, the statutory requirements of changed circumstances and [unfairness]" in subsection 122(1)(a) "also apply." *Caufman,* 829 P.2d at 502.

¶ 50 In this case, although the separation agreement mentioned husband's retirement, its language did not reserve jurisdiction to the court concerning husband's decision to retire or his declining health, or state that husband's good faith retirement or declining health would automatically terminate his obligation to pay future maintenance to wife. Rather, the agreement identified two events — a worsening of wife's medical condition that interfered with her ability to work full time or a substantial increase in her medical costs — as the basis for the court's reserved jurisdiction.

¶ 51 But husband did not ask the court to terminate his maintenance obligation on the basis of either of these events; he

relied, instead, on his own health complications and on his anticipated retirement. Section 14-10-114 therefore did not imbue the trial court with jurisdiction to modify or terminate husband's maintenance obligation. *See Folwell*, 910 P.2d at 93 (by identifying husband's retirement as a specific event, district court properly retained jurisdiction to modify maintenance under section 14-10-114 when husband retired). As a result, we disagree with wife's contention that the separation agreement reserved jurisdiction to the district court to modify maintenance under section 14-10-114 upon husband's retirement. *See Folwell*, 910 P.2d at 93.

VI. Magistrate's Ruling Deeming Husband's Motion Confessed

¶ 52 Wife also contends that the magistrate erred when he found that wife had confessed husband's motion to terminate maintenance. Because the district court considered wife's response before ruling on her C.R.M. 7(a) petition, and because we have reversed the order terminating maintenance and remanded the case for further proceedings, we will not address this contention.

## VII.  Wife's Request for Appellate Attorney Fees

¶ 53     Wife asks that we award her appellate attorney fees under section 14-10-119.  She contends that husband has substantially greater financial resources than she does to litigate this appeal. Because the trial court is better equipped to resolve the factual issues regarding the parties' current financial circumstances, we remand wife's request to the trial court.  *See Kann*, ¶ 84.

¶ 54     We reverse the trial court's order terminating husband's maintenance obligation, and we remand the case to the trial court to determine (1) whether husband's circumstances have changed in such a substantial and continuing way as to make the existing terms of husband's maintenance obligation unfair; and (2) wife's request for appellate attorney fees under section 14-10-119.

JUDGE HAWTHORNE and JUDGE TOW concur.