The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 11, 2021

## 2021COA16

**No. 19CA2136, *Marriage of Callison* — Family Law — Dissolution — Spousal Maintenance**

A division of the court of appeals considers whether the district court may award retroactive temporary maintenance under section 14-10-114, C.R.S. 2020, which was repealed and reenacted in 2014. The division concludes that the reenacted maintenance statute does not prohibit the district court from awarding retroactive temporary maintenance, and thus, the court may order retroactive temporary maintenance within its discretion. The division also concludes that the district court may order retroactive temporary maintenance for the time in which the spouses resided together in the same home after the dissolution proceedings were initiated.

The division concludes, however, that the district court made insufficient findings in support of its order for retroactive temporary maintenance.  Accordingly, the division reverses the court's order and remands the case to the district court for further findings.

Court of Appeals No. 19CA2136
Douglas County District Court No. 18DR30367
Honorable Robert Lung, Judge

In re the Marriage of

Cynthia Jean Herold,

Appellee,

and

Kenneth Paul Callison,

Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE ROMÁN
Welling and Brown, JJ., concur

Announced February 11, 2021

Senn Visciano Canges P.C., James S. Bailey, P. Eric Voorheis, Denver,
Colorado, for Appellee

Robinson Waters & O'Dorisio P.C., Langdon J. Jorgensen, Denver, Colorado,
for Appellant

¶ 1    In this dissolution of marriage proceeding, Kenneth Paul Callison (husband) appeals the portion of the district court's temporary orders awarding retroactive temporary maintenance under the reenacted temporary maintenance statute to Cynthia Jean Herold (wife).  Addressing a question of first impression, we conclude that the reenacted maintenance statute does not prohibit the district court from awarding retroactive temporary maintenance, and, thus, it's not an abuse of discretion if a court orders it.  We also hold that the district court may order retroactive temporary maintenance for the time in which the spouses resided together in the same home after the dissolution proceedings were initiated.  However, because the district court made insufficient findings in support of its order, we reverse the court's order and remand the case for further findings.

## I.    Background

¶ 2    Husband and wife were married at common law for over thirty years.  Almost a year after wife petitioned for the dissolution of their marriage, the court held a temporary orders hearing to consider, among other issues, wife's request for temporary maintenance.

¶ 3     The court found that husband received approximately $50,000 per month in gross income, while wife earned less than $4,000 per month.  It found that the parties had a "lavish lifestyle" during the marriage, noting that they took trips to Europe, the Bahamas, the Cayman Islands, Alaska, and Las Vegas; that wife historically had "no limitation or restriction on her shopping or spending"; and that she shopped "at the finest stores and [ate] at the finest restaurants."  The court further found that wife's standard of living had dramatically declined, recognizing that she was now "eating at McDonald's . . . if she very infrequently eats out" and that she had "about $100 a month" for shopping.  And the court found that despite the gross disparity in their incomes, husband had given wife "zero in spousal support."

¶ 4     The court then determined that wife was incapable of meeting her reasonable needs as established during the marriage.  It ordered husband to pay wife $12,000 per month in temporary maintenance retroactive to the commencement of the dissolution proceeding, which resulted in husband owing wife $144,000 in arrearages.

## II.    Standard of Review

¶ 5    We review an award of temporary maintenance for an abuse of discretion. *See In re Marriage of Rose*, 134 P.3d 559, 561 (Colo. App. 2006); *see also In re Marriage of Antuna*, 8 P.3d 589, 595 (Colo. App. 2000). A district court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner, or when it misapplies the law. *See In re Marriage of Kann*, 2017 COA 94, ¶ 56. However, we review de novo the district court's interpretation and application of the law. *See In re Marriage of Thorstad*, 2019 COA 13, ¶ 27; *In re Marriage of Vittetoe*, 2016 COA 71, ¶ 4.

## III.    Authority to Award Retroactive Temporary Maintenance

¶ 6    Husband contends that the district court had no legal authority to order him to pay retroactive temporary maintenance. Specifically, he argues that by repealing and reenacting the maintenance statute in 2014, the legislature eliminated the district court's ability to impose retroactive temporary maintenance. We do not agree.

## A. Preservation

¶ 7 Wife first argues that husband did not preserve this issue for appellate review, and we therefore should not address it. *See In re Estate of Ramstetter*, 2016 COA 81, ¶ 12. While a party generally must make a timely and specific objection before the district court to preserve an issue for appeal, *see Rinker v. Colina-Lee*, 2019 COA 45, ¶ 25, wife did not request retroactive temporary maintenance at or before the temporary orders hearing. Husband thus had no opportunity to object to an award of retroactive temporary maintenance or argue that the court lacked the authority to impose such an award until the court issued its ruling. And "where, as here, the [district] court rules sua sponte on an issue, the merits of its ruling are subject to review on appeal, whether timely objections were made or not." *Id.* at ¶ 26.

## B. Discussion

¶ 8 When interpreting a statute, we read and consider the statute as a whole and interpret it in a manner that gives consistent, harmonious, and sensible effect to all its parts. *Vittetoe*, ¶ 4. In doing so, "we adopt an interpretation that best effectuates the legislative purposes." *Id.*

¶ 9    Before 2014, the maintenance statute created a rebuttable presumption in favor of temporary maintenance when the parties earned less than a certain income, and it directed the court to begin an award for temporary maintenance "at the time of the parties' physical separation or filing of the petition or service upon the respondent, whichever occurs last." § 14-10-114(2)(c), C.R.S. 2013.

¶ 10   The legislature removed these provisions on temporary maintenance when it repealed and reenacted the maintenance statute in 2014. Ch. 176, sec. 1, § 14-10-114, 2013 Colo. Sess. Laws 639.

¶ 11   Contrary to husband's argument, this repeal does not restrict the court's authority. It has been recognized that the reenactment of the maintenance statute "illustrate[d] the General Assembly's intention for the district court to retain broad discretion" over an award of maintenance. *Vittetoe*, ¶ 14. Whether to award temporary maintenance, therefore, remains a determination committed to the district court's discretion. *See Lanz v. Lanz*, 143 Colo. 73, 75, 351 P.2d 845, 846 (1960); *In re Marriage of Yates*, 148 P.3d 304, 313 (Colo. App. 2006); *Rose*, 134 P.3d at 561. The new statute provides "a more detailed statutory framework" that includes guidelines "to

be considered as a starting point for the determination of fair and equitable maintenance awards." § 14-10-114(1)(b)(II), C.R.S. 2020.

¶ 12    Nothing in the current statute tells the court when it must begin an award of temporary maintenance or restricts the court's ability to award it retroactively. Rather, under the current maintenance statute, the district court "may award a monthly amount of temporary maintenance." § 14-10-114(4)(a)(I); *see also A.S. v. People*, 2013 CO 63, ¶ 21 ("[T]he legislature's use of the term 'may' is generally indicative of a grant of discretion . . . ."). And when doing so, the court must determine a fair and equitable "term for payment of temporary maintenance." § 14-10-114(4)(a)(II); *see also* § 14-10-114(2).

¶ 13    The repeal and reenactment of the maintenance statute does not indicate a restriction on the district court's ability to award retroactive maintenance. Rather, it expanded the district court's discretion in determining a fair and equitable term of maintenance based on the totality of the circumstances in the case. *See Vittetoe*, ¶ 14; *see also* § 14-10-114(4)(a)(II); 24A Am. Jur. 2d *Divorce & Separation* § 603, Westlaw (database updated Nov. 2020) ("[T]he determination as to when an allowance for temporary alimony

6

should begin is generally within the discretion of the court.").  This allows the court to fulfill an important purpose of temporary maintenance — "to place the parties on an equal footing during the dissolution process."  *In re Marriage of Nussbeck*, 899 P.2d 347, 349 (Colo. App. 1995); *see also Bieler v. Bieler*, 130 Colo. 17, 19, 272 P.2d 636, 637 (1954).

¶ 14    Husband, however, argues that without specific statutory authorization, a court may not impose family support obligations for any time before the court conducts a hearing on the issue.  He relies on cases addressing a parent's child support obligation and contends that the rationale from these cases should apply equally to a spouse's temporary maintenance obligation.  *See, e.g.*, *In re Marriage of Serfoss*, 642 P.2d 44, 46 (Colo. App. 1981).  But husband did not present this argument until his reply brief; therefore, we will not address it.  *See In re Marriage of Drexler*, 2013 COA 43, ¶ 24 (declining to address an argument not raised in a party's opening brief).

¶ 15    Nothing in the reenactment of the maintenance statute expressly requires retroactive maintenance or prohibits it.  Given the district court's discretion over the term for an award of

temporary maintenance, we cannot conclude that the court lacked the authority to order retroactive temporary maintenance.

IV.   Retroactive Temporary Maintenance Award

¶ 16   The parties continued to reside together in the marital home after wife filed the dissolution petition, and even attempted to reconcile.  During this time, husband paid the mortgage, utilities, and other shared living expenses.  Husband argues that because he was doing so, the district court improperly awarded retroactive temporary maintenance.  Under these circumstances, we disagree.

¶ 17   In fashioning a maintenance award, the court must consider a spouse's ability to independently meet his or her reasonable needs. § 14-10-114(3)(c)(I), (3)(d); *Antuna*, 8 P.3d at 595; *see also* § 14-10-114(4)(a)(III) (requiring the court to determine temporary maintenance pursuant to the relevant provisions of section 14-10-114(3)).  In doing so, the court "is not limited to satisfying a spouse's basic or survival needs." *Yates*, 148 P.3d at 313.  The court, instead, should consider the facts and circumstances of the case, including the standard of living established during the marriage. *See In re Marriage of Thornhill*, 232 P.3d 782, 789 (Colo. 2010); *Yates*, 148 P.3d at 313.

¶ 18    Wife acknowledged that she had been living in the marital home with husband and that he was paying the mortgage, utilities, and other living expenses.  She testified, however, that she was unable to meet her reasonable financial needs and that husband had not provided her with any money to do so, even though he was receiving over $50,000 per month in gross income.  She further testified that she had wanted to end their living arrangement since filing her petition, but she lacked the financial resources to leave; that she had been forced to liquidate her retirement account and work at a second job to pay her expenses; and that she could not obtain dental care, vision care, or health care because she could not afford to pay the required deductibles.

¶ 19    As well, wife testified to the extravagant lifestyle that the parties had established during the marriage, including driving luxury cars, dining at high-end restaurants, shopping for designer items, and going on expensive vacations.  She also testified that during the dissolution proceeding, husband's lifestyle remained the same but her standard of living had dramatically decreased because husband had restricted her access to their financial resources by

9

cancelling credit cards, closing bank accounts, and limiting her income.

¶ 20    The court found that wife lacked sufficient financial resources to meet her reasonable needs as established during the marriage. It noted that husband had deliberately "chosen the low road" by not financially supporting wife and that it had "never seen a more grave example of disparity and disregard for a spouse." The court then determined that retroactive temporary maintenance was appropriate, finding that it, along with the other temporary orders, would "level [the] playing field."

¶ 21    Given these findings, we disagree with husband that the district court failed to explain its reasons for awarding retroactive temporary maintenance even though the parties were living together. And although husband paid some of the parties' pre-temporary orders expenses, the record supports the court's determination that wife could not meet her reasonable needs as established during the marriage and that an award of retroactive temporary maintenance was appropriate. *See Thornhill,* 232 P.3d at 789; *Yates,* 148 P.3d at 313; *see also Bieler,* 130 Colo. at 20, 272 P.2d at 637 (recognizing that temporary maintenance is intended to

allow a spouse to live in his or her "accustomed manner" pending the dissolution proceeding) (citation omitted).

¶ 22    Still, husband argues that under *In re Marriage of Peterson*, 40 Colo. App. 115, 572 P.2d 849 (1977), a party's maintenance obligation abates when the parties live together and the party obligated to pay maintenance pays the other party's expenses.  But *Peterson* is distinguishable.  There, the former spouses attempted to reconcile after the dissolution of their marriage.  *Id.* at 116, 572 P.2d at 850.  During that time, the parties lived together, and the ex-husband paid the ex-wife a portion of his maintenance obligation and other family expenses.  *Id.* at 116-17, 572 P.2d at 850.  The division held that "under the circumstances of th[at] case, where the parties made a good faith although unsuccessful attempt at reconciliation and where the [ex-]husband supported the family during this time," the ex-wife was not entitled to a maintenance arrearage.  *Id.* at 117, 572 P.2d at 851.  *Peterson* did not hold that a court may never order maintenance for the time in which the parties lived together and one spouse paid living expenses. Specifically, unlike *Peterson*, the district court found, with record

11

support, that husband had not supported wife's reasonable financial needs while they were living together.

¶ 23    Accordingly, the court did not err by ordering husband to pay retroactive temporary maintenance for the time when the parties lived together and husband paid some of their pre-temporary orders expenses.

## V.    Sufficiency of the District Court's Findings

¶ 24    Husband also argues that the district court did not make sufficient findings under section 14-10-114(3) or (4) to support its award of $12,000 per month for retroactive temporary maintenance. We agree that further findings are needed.

Section 14-10-114(3) sets forth a specific process for the district court to follow when considering a maintenance request at permanent orders. *In re Marriage of Wright*, 2020 COA 11, ¶ 13. The process detailed under this statute also provides the framework by which a court must determine temporary maintenance. § 14-10-114(4)(a)(I).

¶ 25    Under section 14-10-114(3), the court must first make written or oral findings on each party's gross income, the marital property apportioned to each party, each party's financial resources, the

12

reasonable financial need as established during the marriage, and the taxability of the maintenance awarded. § 14-10-114(3)(a)(I); *Wright*, ¶ 14.

¶ 26 Next, the court must determine the amount and term of maintenance, if any, that is fair and equitable to both parties after considering the statutory advisory guidelines and a list of non-exclusive statutory factors. § 14-10-114(3)(a)(II)(A), (3)(a)(II)(B), (3)(b), (3)(c); *Wright*, ¶ 15. When, as here, the parties' combined annual adjusted gross income exceeds $240,000, the advisory guideline amount for maintenance under section 14-10-114(3)(b)(I) does not apply. § 14-10-114(3.5). Instead, the court must determine the amount of maintenance based on its consideration of the statutory factors in section 14-10-114(3)(c). § 14-10-114(3.5).

¶ 27 Section 14-10-114(3) also requires the court to find that the party seeking maintenance lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment before awarding maintenance. § 14-10-114(3)(a)(II)(C), (3)(d).

¶ 28     Given the nature of temporary maintenance and the timing of such a decision, certain findings the court must make or factors the court must consider under section 14-10-114(3) for permanent orders may not be relevant to its determination of temporary maintenance. *See, e.g.,* § 14-10-114(4)(a)(II) (noting that the advisory guideline term for maintenance does not apply to temporary maintenance). But the court must still adhere to the process set forth in section 14-10-114(3) and apply the provisions relevant to its temporary maintenance determination. § 14-10-114(4)(a)(I). The court must also "consider any additional factors specific to the determination of temporary maintenance, including the payment of family expenses and debts." § 14-10-114(4)(a)(III).

¶ 29     In the end, the court has discretion to enter a fair and equitable maintenance award, but it must "make specific written or oral findings in support of the amount and term of maintenance awarded." § 14-10-114(3)(e); *see also In re Marriage of Gibbs,* 2019 COA 104, ¶ 9 ("The district court must make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order.").

14

¶ 30     Here, the district court indicated that it was "mindful" of section 14-10-114 and noted that under this statute it was "directed to consider every relevant factor." The court then made findings on the parties' gross incomes; admonished husband for not providing spousal support to wife; considered the parties' financial resources, noting that husband possessed and controlled "a vast majority of the marital assets and marital income"; and discussed the parties' "lavish lifestyle" during the marriage. It stated that it "also reference[d] all the factors under [14-10-114](3)(c)," listing

> the financial resources of the recipient spouse, the pay[o]r spouse, the lifestyle during the marriage[,] . . . [the] limited, if any, distribution of marital property[,] [t]he parties' incomes, employability, their age, their health[,] . . . [t]he undisputable fact that one party has historically earned a higher income[,] [a]nd the significant economic and/or noneconomic contribution to the marriage.

Then, the court determined that wife was incapable of meeting her reasonable needs and awarded her $12,000 per month — the amount wife requested — in retroactive temporary maintenance.

¶ 31     For two reasons, we conclude that additional findings are necessary. First, the court made insufficient findings on what it determined to be wife's reasonable financial needs and whether

$12,000 per month would meet those needs. *See*

§ 14-10-114(3)(a)(I)(D), (3)(c)(I), (4)(a)(I), (4)(a)(III). Wife's financial

affidavit represented expenses of almost $10,000 per month,

excluding her attorney fees, and reported income of almost $4,000

per month. She admitted at the hearing that husband had been

paying the mortgage, utilities, and other shared living expenses

listed in her affidavit — approximately $4,000 per month. She also

acknowledged that she was not incurring an additional $1,200 of

the expenses she had listed. Still, wife said that the expenses on

her financial affidavit did not meet her needs as established during

the marriage and that $12,000 per month was consistent with her

reasonable financial needs. But she indicated that this figure did

not include husband's payment of the mortgage, utilities, and other

living expenses.

¶ 32    Thus, wife's expenditures during the time for which the court

awarded retroactive temporary maintenance were less than $12,000

per month. While the court was not limited to an award that only

satisfied wife's basic needs, *see Yates*, 148 P.3d at 313, it provided

no explanation why $12,000 per month was appropriate for wife.

The court's findings, instead, focused on the parties' lavish lifestyle

during the marriage, but even then, the court made no determination that such a lifestyle supported the amount of maintenance awarded or that such an award met wife's reasonable needs. *Cf. Thornhill*, 232 P.3d at 789 ("[T]he parties' standard of living during marriage is . . . an appropriate . . . *starting* point for the trial court's determination of a particular spouse's reasonable needs . . . .") (emphasis added). We therefore lack a clear understanding of the basis of the court's award of $12,000 per month in retroactive temporary maintenance and are unable to determine whether this amount was appropriate to meet wife's reasonable financial needs. *See* § 14-10-114(3)(a)(I)(D), (3)(c)(I), (3)(e), (4)(a)(I), (4)(a)(III); *see also Gibbs*, ¶ 9.

¶ 33    Second, the court did not make findings related to husband's payment of the shared expenses and debts or otherwise recognize the statute's requirement that it must consider additional factors specific to the determination of temporary maintenance. § 14-10-114(4)(a)(III). We therefore are unable to determine whether the court accounted for husband's undisputed payment of the mortgage, utilities, and other shared living expenses during the

time in which the court ordered retroactive temporary maintenance. *See Gibbs*, ¶ 9.

¶ 34 For these reasons, we reverse the district court's retroactive temporary maintenance order and remand for additional findings. On remand, the court must follow the procedure in subsections (3) and (4) of section 14-10-114, make the required findings — including regarding wife's reasonable financial needs — and consider husband's payment of family expenses and debts and any other factors it deems relevant in determining retroactive temporary maintenance. The findings entered on remand must be sufficient for us to conclude that it considered the relevant factors and to determine the basis for the court's maintenance award. *See Wright*, ¶ 23; *see also Gibbs*, ¶ 9.

## VI. Conclusion

¶ 35 We reverse the district court's award of retroactive temporary maintenance and remand the case for the court to make additional findings in accordance with section 14-10-114(3) and (4).

JUDGE WELLING and JUDGE BROWN concur.