24CA0074 Marriage of Ferwerda 11-21-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0074
Boulder County District Court No. 10DR909
Honorable Andrew Hartman, Judge

In re the Marriage of

Janice Annette Crawford Ferwerda,

Appellant,

and

David Melvin Lopston Ferwerda,

Appellee.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE JOHNSON
Fox and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

Janice Annette Crawford Ferwerda, Pro Se

No Appearance for Appellee

¶ 1      In this post-decree dissolution of marriage case between Janice Annette Crawford Ferwerda (wife) and David Melvin Lopston Ferwerda (husband), wife appeals the district court's order adopting a magistrate's ruling that terminated husband's maintenance obligation.  We reverse and remand the case to the district court for further proceedings.

## I.      Relevant Facts

¶ 2      In 2010, the district court dissolved the marriage.  In doing so, it adopted the parties' separation agreement, which directed husband to pay wife $50,000 in maintenance as a lump sum.

¶ 3      A couple years later, wife moved to modify maintenance.  The magistrate found that wife's income had significantly decreased since the decree and that it was insufficient to meet her needs.  The magistrate modified maintenance and ordered husband to pay wife $1,200 per month going forward.

¶ 4      In 2023, husband moved to terminate his maintenance obligation.  He asserted that he had been laid off in 2021, was unable to find comparable employment, and, at sixty-three years old, was approaching retirement age.

¶ 5    At the hearing, husband testified that, since losing his job, he relied on a severance package, a home equity line of credit, and early withdrawals from his retirement accounts (averaging $3,450 per month) to support himself.  He also testified that within the next month, he planned to seek social security benefits, which he anticipated would be about $3,128 per month, and that he intended to take a lump sum distribution from his pension.  He further acknowledged that he and his current partner shared certain living expenses.  But husband testified that his present income was $0 and that he lacked the ability to continue to pay wife maintenance.

¶ 6    For her part, wife argued that husband's financial resources, which she alleged included approximately $600,000 in retirement funds and a home in the Florida Keys worth $1 million, would allow him to continue to pay maintenance and that he was capable of getting a new job.  She also asserted that her financial circumstances were much worse than husband's circumstances and that she relied on maintenance to meet her basic living expenses.  She indicated that she had not worked since 2014, had relied on public assistance programs, was sixty-nine years old, and had experienced health issues.  She further testified that, without

maintenance, her gross income was only $1,510 per month, which consisted of social security benefits and an annuity payment.

¶ 7    The magistrate terminated maintenance, determining that husband had shown a substantial and continuing change to his financial circumstances. She found that husband was forced into early retirement, his present income was $0, and he was not voluntarily underemployed. The magistrate also found that she "heard no evidence" that husband was being supported by his new partner.

¶ 8    Wife petitioned the district court to review the magistrate's order. The district court denied the petition and adopted the magistrate's order.

## II.    Standard of Review and Applicable Law

¶ 9    When we review a district court's order adopting a magistrate's ruling to terminate maintenance, we act as a second layer of appellate review. *In re Marriage of Young*, 2021 COA 96, ¶ 8; *see also* C.R.M. 7(a)(11). We accept the magistrate's factual findings unless they are not supported by the record and will not disturb the decision absent a showing of an abuse of discretion. *See Young*, ¶¶ 7-8.

¶ 10    A court may modify or terminate maintenance when there has been a showing of changed circumstances so substantial and continuing as to make the terms of the maintenance order unfair. *See* § 14-10-122(1)(a), C.R.S. 2024; *Young,* ¶ 12.  The question is not merely whether the court would have awarded the same maintenance amount based on the parties' current financial circumstances but also whether the changed circumstances have rendered the maintenance order unfair.  *See* § 14-10-122(1)(a); *Young,* ¶ 16.

¶ 11    In making this threshold determination, the court examines the circumstances pertinent to awarding maintenance under the statute in effect when the dissolution proceeding was initiated.  *See In re Marriage of Thorstad,* 2019 COA 13, ¶ 12, *superseded by statute on other grounds,* Ch. 176, sec. 1, § 14-10-114(5), 2013 Colo. Sess. Laws 648, *as stated in Young,* ¶ 13; *In re Marriage of Nelson,* 2012 COA 205, ¶ 26; *see also* § 14-10-114(9), C.R.S. 2024 ("Actions filed before January 1, 2014, are determined pursuant to the provisions of this section as it existed at the time of the filing of the action.").

¶ 12    Under the relevant statute, the court may award maintenance when it finds that the party seeking maintenance lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment.  § 14-10-114(3), C.R.S. 2010.  It also must make the maintenance determination after considering such relevant factors as (a) the financial resources of the party seeking maintenance and that individual's ability to meet her needs independently; (b) the time necessary to enable the party seeking maintenance to acquire sufficient education or training to find appropriate employment and that party's future earning capacity; (c) the standard of living established during the marriage; (d) the duration of the marriage; (e) the age and the physical and emotional condition of the party seeking maintenance; and (f) the ability of the party from whom maintenance is sought to meet his needs while meeting those of the party seeking maintenance.  § 14-10-114(4), C.R.S. 2010.

### III.  Analysis

¶ 13    Wife contends that the magistrate erred by finding that there was "no evidence" of husband receiving financial support from his current partner.  We agree.

¶ 14    When a court considers a request to terminate maintenance, it may consider the financial assistance a payor party receives from that person's new significant other. *See In re Marriage of Bowles*, 916 P.2d 615, 618 (Colo. App. 1995).

¶ 15    Husband testified that his current partner was a pediatrician and that they equally shared expenses associated with the Florida Keys home, such as utilities, insurance, and taxes. In his sworn financial statement, husband reported that the household expenses amounted to approximately $3,000 per month, without specifying whether this amount was total monthly expenses or only his share. Husband also testified that while he did not own a car, he drove his partner's vehicle. In addition, he said that he split the costs of gas and food with his partner, which, according to his sworn financial statement, amounted to over $700 per month. Husband further confirmed that he and his partner had a joint bank account that they used to pay their shared expenses.

¶ 16    By contributing to these living expenses, husband's partner assisted husband in satisfying his reasonable needs. The magistrate thus clearly erred by finding that there was "no evidence" that he received financial support from his current

partner.  *See Young*, ¶ 8; *see also Bowles*, 916 P.2d at 618.
Consequently, the magistrate overlooked husband's financial
circumstance when analyzing his ability to meet his needs while
paying maintenance and determining whether the $1,200 per
month maintenance order was unfair.  *See* § 14-10-114(4)(f), C.R.S.
2010; § 14-10-122(1)(a).

¶ 17    Likewise, the magistrate did not examine wife's financial
resources when deciding to terminate maintenance.  *See* § 14-10-
114(4)(a), C.R.S. 2010.  Specifically, it is unclear whether, and to
what extent, the magistrate considered wife's present financial
resources.  *See In re Marriage of Gibbs*, 2019 COA 104, ¶ 9 ("The
district court must make sufficiently explicit findings of fact to give
the appellate court a clear understanding of the basis of its order.").

¶ 18    In her ruling, the magistrate recapped the parties' conflicting
testimony, which included wife's representation that she had
severely limited income and husband's claim that wife had
additional resources available to her that she had not disclosed.
For example, husband testified that wife purportedly had a pension,
a 401(k) account, and monies in bank accounts, but he did not
know specifics because wife had not fully disclosed her finances.

The magistrate did not indicate which party she found more credible on the matter. Nor did the magistrate make express findings to resolve the conflicting evidence.

¶ 19 We therefore reverse the district court's order adopting the magistrate's ruling that terminated husband's maintenance obligation. The matter is remanded for the district court to reconsider husband's motion. *See* C.R.M. 7(a)(10) ("The reviewing judge shall adopt, reject, or modify the initial order or judgment of the magistrate by written order, which order shall be the order or judgment of the district court."); *see also In re Marriage of Matheny*, 2024 COA 81, ¶ 19 (on a petition for review of a magistrate order, the district court cannot remand the matter to the magistrate for reconsideration).

¶ 20 In reconsidering wife's motion, the district court must base its decision on the parties' current financial circumstances, taking additional evidence and conducting further proceedings as it deems appropriate. *See* C.R.M. 7(a)(8) ("The reviewing judge shall consider the petition for review on the basis of the petition and briefs filed, together with such review of the record as is necessary. The reviewing judge also may conduct further proceedings, take

additional evidence, or order a trial de novo in the district court."); *see also In re Marriage of Wright*, 2020 COA 11, ¶ 24; *In re Marriage of Kann*, 2017 COA 94, ¶ 79; *In re Marriage of Folwell*, 910 P.2d 91, 93 (Colo. App. 1995) ("[M]odification of maintenance must be based upon the parties' needs and circumstances at the time of the hearing . . . ."). The court also must make findings of fact and conclusions of law sufficiently explicit to give us an understanding of the basis of its ruling. *See Gibbs*, ¶ 9; *see also* § 14-10-114(4), C.R.S. 2010; § 14-10-122(1)(a).[1]

## IV. Conclusion

¶ 21 We reverse the district court's order adopting the magistrate's ruling terminating husband's maintenance obligation. The case is remanded to the district court for further proceedings consistent with this opinion.

JUDGE FOX and JUDGE SHOCK concur.

---

[1] In light of our conclusion, we need not address wife's remaining contentions.