2012 COA 194

### Eldon K. VAN GUNDY, Plaintiff–Appellee,

v.

### Quinton VAN GUNDY, Defendant–Appellant.

### No. 11CA0750.

Colorado Court of Appeals, Div. IV.

Nov. 8, 2012.

---

Joseph Coleman & Associates, LLC, Joseph Coleman, Grand Junction, Colorado, for Plaintiff–Appellee.

Aldrich Law Firm, LLC, Frederick G. Aldrich, Grand Junction, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

¶ 1 Defendant, Quinton Van Gundy (trustee), appeals a portion of the judgment entered after a bench trial in favor of plaintiff, Eldon Van Gundy (beneficiary), on beneficiary's breach of contract claim, as well as the court's award of attorney fees to beneficiary. We affirm in part, reverse in part, and remand the case with directions.

## I. Background

¶ 2 In 2004, beneficiary created an irrevocable trust to be managed by trustee, his son, funding it with real estate and shares of stock in a family business.

¶ 3 As relevant here, the trust agreement provided generally that (1) trust property would be "held, managed, administered, and distributed by Trustee as provided in this Agreement"; (2) trustee could expend trust funds for beneficiary's health, maintenance,

support, and comfort in whatever amounts trustee, in his sole discretion, deemed advisable; and (3) trust assets would not be subject to beneficiary's creditors' claims and beneficiary could not "encumber, hypothecate, or alienate" trust assets (a so-called "spendthrift" provision).

¶ 4 Section 8 of the trust agreement enumerated trustee's powers and discretion, which trustee was to exercise "in a fiduciary capacity." Subsection (d) of section 8 is at the heart of the parties' dispute. It stated that trustee would have the power and discretion

> [t]o invest and reinvest in common stocks, preferred stocks, investment trusts, bonds, securities and other property, real or personal, foreign or domestic, including any undivided interest in any one or more common trust funds maintained by any corporate trustee, *whether or not such investments be of the character permissible for investments by fiduciaries under any applicable law, and without regard to the effect any such investment or reinvestment may have upon the diversity of the investments.*

(Emphasis added.)

¶ 5 Trustee sold the initial assets of the trust in early 2006, for a total of over $1.3 million. That year, trustee deposited nearly $1.05 million of trust funds into a brokerage account.[1] By November 2006, trustee had invested 100% of the trust's brokerage account funds in common stocks and mutual funds. Among the investments were 5,000 shares of stock in Crystallex International Corporation (a Venezuelan gold mining company) purchased for $26,508, and some stock in other companies purchased on margin.[2]

¶ 6 In early 2007, trustee met with beneficiary and beneficiary's other son. Trustee identified trust objectives, including that trustee would diversify the trust holdings so

that only 30% of trust assets would be invested in stocks. Notwithstanding this stated objective, trustee continued to maintain 100% of trust assets in stocks and mutual funds until March 2009, when he received a notarized letter from beneficiary asking him to liquidate all trust assets. Though the value of the trust's holdings had dropped precipitously from late 2008 to early 2009, trustee complied with beneficiary's request and sold the bulk of the trust's brokerage account holdings that month.[3] As a result, the trust realized a long-term loss of over $340,000. The remaining value of the trust's brokerage account was just over $100,000.[4]

¶ 7 Later that year, beneficiary filed a complaint against trustee, asserting claims for breach of fiduciary duty, breach of contract, breach of duty to provide a complete accounting, and to quiet title. He further alleged that trustee had fraudulently induced him to create the trust, and sought termination of the trust and retitling of trust assets in his name.

¶ 8 Before trial, the district court dismissed the claims of fraudulent inducement and breach of fiduciary duty (the latter having been deemed duplicative of the breach of contract claim).

¶ 9 Following a bench trial, the district court found that trustee had breached his contractual duty to beneficiary by purchasing stocks on margin, which, "under the circumstances," violated the prudent investor rule codified in subsection 15–1.1–102(a), C.R.S. 2012. The court acknowledged that current Colorado law does not classify margin investments as per se imprudent, and that the trust agreement granted trustee the power to invest in property "whether or not such investments be of the character permissible for investments by fiduciaries under any applicable law." Nonetheless, it ruled that

---

1. The remaining money was deposited into and distributed from trustee's personal bank account. According to trustee, the trust no longer holds assets in that account.

2. Stocks purchased on margin are purchased with funds borrowed from a broker, for which the remainder of the purchaser's brokerage account serves as collateral.

3. The account continued to hold stock in three companies in its margin account.

4. Trustee reported that he had made payments from the trust over the course of three years for family gifts ($222,000), a house ($218,000) and car ($31,000) for beneficiary, taxes ($205,000), legal fees and credit card debts ($129,000), and beneficiary's living expenses ($56,000).

trustee's duty to act prudently was not eliminated by the terms of the trust, and further found that trustee's investments on margin were imprudent given the trust's purpose and beneficiary's age and financial situation. In addition, the court held that, under section 15–1.1–103, C.R.S.2012, trustee was required to diversify trust investments, but had failed sufficiently to do so. The court calculated damages of $376,959.24 due to trustee's investment on margin and failure to diversify.

¶ 10 The district court also found that trustee's $26,508 investment in Crystallex had been imprudent, awarding damages for the entire loss resulting from that investment. In total, the court awarded beneficiary $402,959.24 in damages, plus attorney fees, on his breach of contract claim. It further ordered a complete accounting by trustee and awarded damages for any trust funds unaccounted for or improperly disbursed. Trustee subsequently provided an accounting and corrections, and the court then awarded beneficiary $2,624 in additional relief for funds improperly disbursed, and subtracted $3,140 for the remaining value of the Crystallex investment, entering a final damages award of $399,819.24.[5]

¶ 11 Trustee appeals, contending that the district court erred in applying the prudent investor rule and consequently ruling that he had breached the trust agreement by purchasing stock on margin and failing sufficiently to diversify.

## II. Discussion

### A. Standard of Review

■ ¶ 12 We review a court's factual findings following a trial to the court only for clear error. *M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380, 1383–84 (Colo.1994); *Page v. Clark,* 197 Colo. 306, 313, 592 P.2d 792, 796 (1979). A court's factual findings are clearly erroneous only if there is no support for them in the record. *M.D.C./Wood,* 866 P.2d at 1384.

■ ¶ 13 Trustee's contentions on appeal raise issues of statutory interpretation and interpretation of the trust agreement. We review a district court's resolutions of such issues de novo. *Associated Governments of Northwest Colo. v. Colo. Pub. Utils. Comm'n,* 2012 CO 28, ¶ 11, 275 P.3d 646 (statutory interpretation); *Denver Foundation v. Wells Fargo Bank,* 163 P.3d 1116, 1122 (Colo.2007) (interpretation of trust agreement); *Casey v. Colorado Higher Educ. Ins. Benefits Alliance Trust,* 2012 COA 134, ¶ 20, —— P.3d —— (interpretation of trust agreement); *see also Loveland Essential Group, LLC v. Grommon Farms, Inc.,* 251 P.3d 1109, 1114 (Colo.App.2010) (reviewing de novo the district court's application of governing legal standards).

### B. Applicable Law

¶ 14 In 1995, the General Assembly enacted the Uniform Prudent Investor Act (UPIA), drawing upon the revised standards for prudent trust investment set forth in the Restatement (Third) of Trusts: Prudent Investor Rule (1992). Title 15, article 1.1 official cmt. prefatory note, C.R.S. 2012; *see Micale v. Bank One N.A.,* 382 F.Supp.2d 1207, 1219 (D.Colo.2005) ("The UPIA essentially compl[e]ments and codifies the common law.").

¶ 15 Section 15–1.1–101, C.R.S.2012, of the UPIA provides:

(a) Except as otherwise provided in subsection (b) of this section, a trustee who invests and manages trust assets owes a duty to the beneficiaries of the trust to comply with the prudent investor rule set forth in this article.

(b) *The prudent investor rule, a default rule, may be expanded, restricted, eliminated, or otherwise altered by the provisions of a trust.* A trustee is not liable to a beneficiary to the extent that the trustee acted in reasonable reliance on the provisions of the trust.

(Emphasis added.)

¶ 16 Subsequent sections of the UPIA set forth, as relevant here, a prudent trustee's

---

5. The court also ordered injunctive relief in the form of removal of trustee as the trustee and a prohibition barring trustee from taking any actions relating to the trust except those necessary to transfer administration of the trust to a successor trustee. And finally, the court found against beneficiary on his quiet title claim.

obligations and the considerations affecting a prudent trustee's investment decisions. *See* §§ 15–1.1–102 to –109, C.R.S.2012; *see* § 15–1.1–101 official cmt., C.R.S. 2012 ("Sections [15–1.1–102 to –109] of this Act identify the main factors that bear on prudent investor behavior.").

¶ 17 Section 15–1.1–102 is "the heart of the [UPIA]"—it sets forth the standard of care for prudent investment. § 15–1.1–102 official cmt., C.R.S. 2012. Subsection (a) thereof provides that a trustee must consider the purposes of the trust and select investments with reasonable care, skill, and caution. *See also* Restatement (Third) of Trusts § 90 (2007). Subsection (c) includes a nonexclusive list of factors that a prudent trustee should consider in selecting investments, including needs for liquidity and regularity of income. Subsection (e) abrogates "[a]ll categoric restrictions on types of investments," and allows any investments appropriate for achieving the risk/return objectives for the trust. Title 15, article 1.1 official cmt. prefatory note.

¶ 18 Other subsections provide that a prudent trustee must diversify trust investments; must act solely for the beneficiaries' benefit; and must invest and manage trust assets impartially, taking into account any differing interests of the beneficiaries. §§ 15–1.1–103, –105, –106, C.R.S.2012; *see also* Restatement (Third) of Trusts § 90(b), (c).

■ ¶ 19 Whatever the scope of the prudent investor rule, the UPIA, as noted, expressly provides that it is a default rule that can be altered or eliminated by the terms of the trust instrument. § 15–1.1–101(b); *see also* Restatement (Third) of Trusts § 76 & cmt. b(1), § 91 cmts. a, d. Thus, if a trustee is empowered to exercise his discretion under the terms of the trust in a manner which might otherwise be inconsistent with the prudent investor rule, then the trustee's performance under that power does not give rise to a claim for breach of duty. *See W.A.K. II v. Wachovia Bank, N.A.,* 712 F.Supp.2d 476, 481–82 (E.D.Va.2010) (applying Virginia law); *Atwood v. Atwood,* 25 P.3d 936, 942–43 (Okla. Civ.App.2001); *see also Nelson v. First Nat'l Bank & Trust Co.,* 543 F.3d 432, 437 (8th Cir.2008) (applying North Dakota law).

■ ¶ 20 But trust provisions altering or eliminating the prudent investor rule do not relieve a trustee of all fiduciary duties to the beneficiary. That a particular type of investment is permitted by such provisions does not mean that it is required. Such provisions do not relieve a trustee from all obligation to act with prudence. They do not, for example, authorize a trustee blindly to place trust holdings in a particular investment which any reasonable investor would perceive as inherently suspect. *See* Restatement (Third) of Trusts § 91 cmts. f, g(1).

¶ 21 "The nature and extent of a trustee's duties and powers are primarily determined by the terms of the trust." Restatement (Third) of Trusts § 90 cmt. b. We interpret a trust using the same guidelines we use for interpreting a contract. *Denver Foundation,* 163 P.3d at 1122; *Casey,* ¶ 20. In reviewing terms of a trust, we seek to give effect to the parties' intent. We determine the parties' intent from the language of the agreement, and we interpret the provisions in the agreement as a whole. *Denver Foundation,* 163 P.3d at 1122; *Casey,* ¶ 21. We also consider the relevant circumstances in effect at the time the parties entered into the trust agreement. *Denver Foundation,* 163 P.3d at 1122.

## C. Analysis

■ ¶ 22 The trust agreement expressly granted trustee the discretion and power to invest in stocks, "whether or not ... of the character permissible for investments by fiduciaries under any applicable law, and without regard to the effect [the investment] may have upon the diversity of the investments." By its plain language, this section disavowed the standard applied to investment selection set forth in section 15–1.1–102. *Cf. Nelson,* 543 F.3d at 437 (trust term providing that "any investment made or retained by the trustee in good faith shall be proper despite any resulting risk or lack of diversification" authorized the trustee's departure from prudent investor considerations); *W.A.K. II,* 712 F.Supp.2d at 481–82 (language granting the trustee power to invest trust property "without being confined to investments lawful

through statute or otherwise for fiduciaries in the State of Virginia" eliminated the prudent investor rule as to trust investments); *Atwood,* 25 P.3d at 942–43 (where trust agreement gave the trustee broad discretion to invest "without being limited in the selection of investments by any statutes [or] rules of law," the trustee was not required to diversify trust holdings).

¶ 23 The district court, however, applied the prudent investor rule in determining whether the purchases on margin, as a category of investment, constituted breaches of the trustee's duties under the agreement. Relying on subsections (b) and (c) of section 15–1.1–102, the district court found that trustee had failed to consider the relevant factors for prudent investment. Specifically, the district court relied on the purpose of the trust and beneficiary's age and financial situation. Given those circumstances, the court reasoned that trustee should have "eschew[ed] risk in favor of preservation of trust capital," and that consideration of those factors led to the conclusion that the purchases on margin were per se breaches of trustee's duty.

¶ 24 But the record reflects that the circumstances on which the court relied already existed when beneficiary entered into the trust agreement in 2004. Notwithstanding those extant circumstances, the agreement expressly allowed trustee to invest trust assets without regard to whether the type of investment ordinarily would be permissible under the prudent investor rule.

¶ 25 We hasten to point out that the court did not find that any fact or circumstance relating specifically to the purchase of a particular stock on margin rendered any such purchase imprudent.[6] Rather, the court effectively deemed purchases of stock on margin categorically imprudent. Given the express terms of subsection 8(d) of the trust agreement, that was error.

¶ 26 Analysis of the district court's finding that trustee did not sufficiently diversify the trust's investments leads to the same conclusion. Though trust provisions are strictly construed against dispensing with the diversification requirement altogether, they may, as here, relax the degree of diversification required. Restatement (Third) of Trusts § 91 cmt. f; *see* § 15–1.1–102(b). Just prior to the sell-off in March 2009, trustee maintained investments in seven common stocks and a mutual fund, with the largest holding (32%) in the mutual fund. These holdings are sufficiently diverse to meet the relaxed standard of diversification set forth by the trust agreement term authorizing investment "without regard to the effect [it] may have upon the diversity of investments."[7]

¶ 27 The district court essentially read subsection 8(d) out of the trust agreement, substituting therefor the very standard altered or eliminated by that section. In doing so, the court erred. Where possible, a court must give effect to all parts of a contract. *See New Brantner Extension Ditch Co. v. Kramer,* 57 Colo. 218, 223, 141 P. 498, 500 (1914); *Petition of First Interstate Bank of Denver, N.A.,* 767 P.2d 792, 795 (Colo.App. 1988); Restatement (Second) of Contracts § 203(a); 5 Margaret N. Kniffin, *Corbin on Contracts* § 24.22, at 242–43 (rev. ed. 1998). And unless a party enters an agreement under circumstances of fraud, duress, or incapacity, a court should not relieve that party of the consequences of the bargain merely because the terms may have been improvident. *Fox v. I–10, Ltd.,* 957 P.2d 1018, 1022 (Colo.1998); *Sedalia Land Co. v. Robinson Brick & Tile Co.,* 28 Colo.App. 550, 553–54, 475 P.2d 351, 354 (1970). The court here made no finding of such circumstances. (Indeed, the court found that beneficiary had not been fraudulently induced to enter into the trust agreement.)[8]

---

6. Also, the stock purchases were of stock in established companies traded on major exchanges.

7. We express no opinion on whether the language of subsection 8(d) of the trust agreement altered or eliminated any obligation of trustee other than those addressed in sections 15–1.1–102 and –103 of the UPIA, as no other such obligation is at issue in this case.

8. Beneficiary did not cross-appeal. Therefore, we do not address the district court's finding that beneficiary had not been fraudulently induced to enter into the trust agreement. Nor do we express any opinion about whether the court erred in dismissing beneficiary's claim for breach of fiduciary duty. *See Casey,* ¶ 29 ("Fiduciary relationships may be the kind of special relationship that will trigger [a contract-independent] com-

¶ 28 Accordingly, we conclude that the district court erred by deeming trustee's purchases on margin and failure to diversify investment as breaches of his duty under the trust agreement and, consequently, by finding trustee liable for the losses the court attributed to the margin investments.[9] In light of our resolution of this issue, we need not address trustee's remaining contentions.

### III. Attorney Fees

¶ 29 Given our reversal of a substantial portion of the court's damages award (the portion not attributable to the Crystallex investment), we reverse the court's award of attorney fees and remand the case for the court to redetermine the amount of fees to which beneficiary is entitled.

¶ 30 Because beneficiary has not prevailed substantially on appeal, we deny his request for an award of appellate attorney fees.

¶ 31 That portion of the judgment determining that trustee breached the trust agreement by purchasing stocks on margin or failing sufficiently to diversify the trust's investments is reversed, as is the award of attorney fees. In all other respects, the judgment is affirmed. The case is remanded for further proceedings consistent with this opinion.

Judge GRAHAM and Judge TERRY concur.

---

mon law duty of care."); *id.* at ¶ 62 (Hawthorne, J., concurring in part and dissenting in part). Moreover, we do not decide whether trustee is liable for breaches of the duty of accounting expressly created by the trust agreement or any implied contractual duties. *See Trevino v. HHL Fin. Servs., Inc.,* 945 P.2d 1345, 1346 n. 1 (Colo. 1997) (declining to address issue not raised on appeal); *People in Interest of N.G.,* 2012 COA 131, —— P.3d ——, n. 14, 2012 WL 3129019 (same).

9. Trustee does not contend on appeal that the district court erred by finding him liable for the losses the trust incurred based on the investment in Crystallex, and therefore we do not address the court's finding as to that investment.