24CA0373 Marriage of Roberts 03-20-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0373
El Paso County District Court No. 23DR30740
Honorable Amanda J. Philipps, Judge

In re the Marriage of

Patricia Roberts,

Appellee,

and

Aaron Ray Roberts,

Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE SCHOCK
Freyre and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 20, 2025

KHM Attorneys at Law, PLLC, Alexander Masterson, Colorado Springs, Colorado, for Appellee

Law Office of Dailey & Pratt, LLC, Joel M. Pratt, Colorado Springs, Colorado, for Appellant

¶ 1    In this dissolution of marriage case between Patricia Roberts (wife) and Aaron Ray Roberts (husband), husband appeals those portions of the permanent orders concerning the property division and maintenance. We affirm the judgment and remand the case for further proceedings on wife's request for appellate attorney fees.

## I.    Background

¶ 2    The parties married in 2010. In 2024, the district court dissolved their marriage and entered permanent orders.

¶ 3    In dividing the marital property, the district court excluded from the marital estate a house in Texas (Danvers) that wife had owned before the marriage. The court found that the parties sold Danvers to wife's parents in 2012 in exchange for $30,000 and wife's parents' agreement to pay the remaining $39,800 balance of the mortgage (the 2012 agreement). The court explained that although the title and the mortgage remained in wife's name, it was the parties' clear intent to transfer ownership to wife's parents.

¶ 4    The district court divided the marital assets — including approximately $200,000 of equity in the marital home — roughly equally. But it allocated most of the marital debt to husband, including around $214,000 in student loans that husband had

1

incurred while obtaining a master's degree. The court awarded wife $800 per month in maintenance for six years and eleven months.

## II. Property Division

¶ 5 Husband argues that the district court erred by (1) excluding Danvers from the division of the marital estate; and (2) allocating husband's student loans to husband on the ground that wife would not benefit from them, while also awarding wife maintenance based on husband's income. We perceive no abuse of discretion.

### A. Applicable Law and Standard of Review

¶ 6 The division of marital property requires a three-step analysis. *LaFleur v. Pyfer*, 2021 CO 3, ¶ 63. The district court must (1) determine whether an interest constitutes property; (2) if so, classify the property as marital or separate; and (3) value and equitably distribute the marital property after considering the factors in section 14-10-113(1), C.R.S. 2024. *Lafleur*, ¶ 63.

¶ 7 An equitable division of the marital estate need not be equal. *In re Marriage of Wright*, 2020 COA 11, ¶ 3. In reaching an equitable division, the district court must consider all relevant factors, including each party's contribution to the acquisition of the marital property, the value of each party's separate property, each

2

party's economic circumstances, and any increases or decreases in the value of separate property during the marriage or the depletion of separate property for marital purposes. § 14-10-113(1)(a)-(d).

¶ 8 The district court has considerable latitude to determine an equitable division based on the facts of each case, and we will not disturb its decision absent an abuse of discretion, which occurs when the court acts in a manifestly arbitrary, unfair, or unreasonable manner, or when it misapplies the law. *See In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001); *In re Marriage of Herold*, 2021 COA 16, ¶ 5. We review the district court's factual findings for clear error and will only set them aside if they have no record support. *Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12.

## B. Danvers

¶ 9 Husband asserts, alternatively, that (1) Danvers was marital property, either in its entirety or to the extent it increased in value during the parties' marriage; or (2) Danvers was wife's separate property that should have been considered as an economic circumstance in dividing the marital estate. We are not persuaded.

### 1. Additional Background

¶ 10    It was undisputed that wife acquired Danvers before the parties' marriage. In the 2012 agreement, husband and wife agreed to sell Danvers to wife's parents for $69,800, consisting of $30,000 in cash and $39,800 in payment of the remaining mortgage balance. Wife's parents also agreed to pay for insurance and taxes on the home. The agreement provided that wife would remove her name from the property "[u]pon mortgage payment completion."

¶ 11    Wife testified that, for several years, her parents paid the mortgage and property taxes in accordance with the 2012 agreement. She also testified that her parents acted as the owners of Danvers, including by renting out and managing the property.

¶ 12    In 2017, wife's parents were prepared to pay off the mortgage. But at that time, the parties needed funds to pay down their credit card debt. Therefore, according to wife, rather than pay off the low-interest mortgage, wife's parents verbally agreed to pay the $19,500 mortgage balance to the parties in exchange for wife's assumption of responsibility for the mortgage payments (the 2017 agreement). Wife testified that husband was aware of this arrangement.

¶ 13    Although wife never transferred the Danvers title to her parents, she explained that she never saw the need to do so, given her familial relationship with her parents, the 2012 agreement, and the low-interest rate on the existing mortgage. Wife's mother confirmed wife's description of the 2012 and 2017 agreements and similarly testified that, in reliance on those agreements, she had acted as an owner of Danvers, including by renting it out, paying associated expenses, and mitigating a flood on the property.

¶ 14    The district court credited wife and her mother and found that the parties' "clear intent" was to transfer ownership of Danvers to wife's parents under the 2012 agreement. The court also found that wife's parents had acted as owners of the home since 2012 and that the 2017 agreement was a loan from wife's parents, with repayment made through wife's mortgage payments. The court therefore found that while Danvers was wife's separate property going into the marriage, no portion of it remained marital property (or wife's property) because it had been sold to wife's parents.

## 2.    Analysis

¶ 15    We first reject husband's suggestion that Danvers was marital property in its entirety. Marital property means "all property

acquired by either spouse *subsequent* to the marriage." § 14-10-113(2) (emphasis added). The district court found, and husband does not dispute, that wife acquired Danvers *before* the marriage, meaning that Danvers was her separate property. *See id.* It was also undisputed that title to Danvers and the corresponding mortgage remained solely in wife's name during the marriage, thus precluding any presumption of a gift to the marriage. *See In re Marriage of Krejci*, 2013 COA 6, ¶ 4 (recognizing that property placed in joint ownership during the marriage is presumed to be marital property). Husband does not develop any argument as to how his signature on the 2012 agreement somehow converted Danvers to marital property. *See Woodbridge Condo. Ass'n, Inc. v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 44 (declining to consider undeveloped and conclusory arguments), *aff'd*, 2021 CO 56.

¶ 16 We also reject husband's contention that wife retained an interest in Danvers, and correspondingly, that some portion of that interest was marital property. Husband stakes this claim on his argument that the unwritten 2017 agreement was void under the statute of frauds, either because it was a material modification of a contract for the sale of land, *see* § 38-10-108, C.R.S. 2024; an

6

agreement that could not be performed within one year, *see* § 38-10-112(1)(a), C.R.S. 2024; or a promise to answer for the debt of another, *see* § 38-10-112(1)(b).  As a result, husband maintains that wife could declare her parents in default of the 2012 agreement for not paying the Danvers mortgage and reclaim the property.

¶ 17    But even assuming the 2017 agreement violated the statute of frauds — a point we do not decide — that agreement would still be enforceable because wife and her parents substantially performed under that agreement.  *See Laleh v. Johnson*, 2017 CO 93, ¶ 24 (noting that we can affirm on any ground supported by the record).

¶ 18    Section 38-10-110, C.R.S. 2024, provides that "[n]othing in [the statute of frauds] shall . . . abridge the powers of courts of equity to compel the specific performance of agreements in cases of part performance of such agreement."  Thus, a court may enforce an otherwise invalid oral contract when there is part performance that is "(1) substantial; and (2) required by, and fairly referable to no other theory besides that allegedly contained within the oral agreement."  *Nelson v. Elway*, 908 P.2d 102, 108 (Colo. 1995).

¶ 19    An oral promise may also be enforced based on promissory estoppel when there is (1) a promise; (2) that the promisor

reasonably should have expected would induce action or forbearance by the promisee; (3) on which the promisee reasonably and detrimentally relied; and (4) that must be enforced in order to prevent injustice. *Am. Pride Co-op. v. Seewald*, 968 P.2d 139, 142 (Colo. App. 1998); *Pinnacol Assurance v. Hoff*, 2016 CO 53, ¶ 32.

¶ 20 We conclude that the district court's findings were sufficient to support the enforceability of the 2017 agreement under either the partial performance doctrine or promissory estoppel. As the district found, wife's parents substantially — indeed, fully — performed the 2017 agreement by paying the $19,500 mortgage balance to the parties and ceasing further payment of the mortgage. And wife substantially performed by making the mortgage payments. We see no reason the parties would have taken these actions other than the existence of the oral agreement. *See Nelson*, 908 P.2d at 108.

¶ 21 Similarly, the district court's findings were sufficient to establish that wife's parents reasonably relied on the 2017 agreement — not only by paying the mortgage balance to the parties and stopping their mortgage payments, but also by maintaining and managing Danvers as their own property — such that the promise must be enforced. *See Bd. of Cnty. Comm'rs v. DeLozier*, 917 P.2d

714, 716 (Colo. 1996) (recognizing that "[a] promise that is binding pursuant to the doctrine of promissory estoppel is a contract, and full-scale enforcement by normal remedies is appropriate").

¶ 22 Moreover, even if the 2017 agreement were not enforceable, that would not make wife the owner of Danvers. The district court found, with record support, that the parties sold Danvers to wife's parents in 2012. The 2012 agreement required wife's parents to pay the remaining mortgage and provided that upon completion of those payments, wife would remove her name from the title. But nothing in the agreement provided that ownership of Danvers would revert to wife if the mortgage payments were not made — or if, as it happened, they were made in a lump sum directly to the parties.

¶ 23 Thus, the district court did not err by finding that wife did not have an interest in Danvers, even if her name remained on the title. A party in a dissolution proceeding has a property interest only to the extent the party has "an enforceable right to receive a benefit." *In re Marriage of Cardona*, 2014 CO 3, ¶ 26. And because the parties had transferred ownership of Danvers to wife's parents, wife had no enforceable right with respect to Danvers. Indeed, by the time of the permanent orders hearing, the parties had both already

received — in the form of $30,000 in 2012, $19,500 in 2017, and the payment of the Danvers mortgage and other expenses in the interim — all the benefit to which they were entitled. It follows that the district court did not abuse its discretion by failing to consider wife's putative interest in Danvers as an economic circumstance for purposes of its equitable distribution. *See* § 14-10-113(1)(c).

¶ 24 We therefore conclude that the district court did not abuse its discretion by declining to treat Danvers as marital property or otherwise to consider Danvers in dividing the marital estate.

## C. Allocation of Student Loans

¶ 25 We next reject husband's challenge to the allocation of his student loans to him alone. Husband contends that the district court made contradictory findings by allocating to him the full value of the student loans because wife would not continue to benefit from the resulting increased income, while awarding wife maintenance based on the increased income. We disagree.

¶ 26 A party's student loans obtained during the marriage are considered marital debt. *In re Marriage of Morton*, 2016 COA 1, ¶ 6. But that does not foreclose a district court from allocating responsibility for the loans entirely to the party who incurred them.

*Id.* at ¶ 9. A court does not abuse its discretion by finding that a party's student loans should be solely that party's responsibility where the party's degree was earned later in the marriage and will primarily benefit that party. *Id.*; *see also In re Marriage of Faulkner*, 652 P.2d 572, 574 (Colo. 1982) (holding that court may consider parties' future earning capacity when allocating marital debt); *Wright*, ¶ 3 (noting that property division need not be equal).

¶ 27   In allocating the student loans to husband, the court properly found they were marital debt. But it reasoned that wife only benefited for a "brief period of time" from husband's increased earning capacity arising from his advanced degree and that she was "not going to benefit to the same degree post-dissolution as [husband]." The court further explained that husband was earning $190,000 per year, while wife was earning only a third of that.

¶ 28   The district court's findings are supported by the record, and its allocation of the debts to husband was not an abuse of discretion. Husband testified that his advanced degree contributed to a $90,000 increase in his annual income. Although the record does not reflect when husband earned the degree, wife testified that he was attending school in 2017, and his student loan statements

11

indicated that he was incurring debt into 2019 — just five years before the parties' marriage dissolved. Moreover, husband was forty-three years old at the time of the permanent orders, giving him decades to benefit from his increased earning capacity. Under these circumstances, where the degree will "primarily benefit" husband, the district court acted within its substantial discretion by allocating the student loans entirely to him. *Morton*, ¶ 9.

¶ 29 We disagree with husband that the allocation was inconsistent with the award of maintenance to wife. The court's observation that wife would not benefit from husband's increased earning power to the same degree as husband post-decree was correct. While husband's income increased by $90,000 per year, wife will receive maintenance of just $800 per month for a total of six years and eleven months. Notably, the court did not award wife the full guideline amount of maintenance based on husband's income. Instead, it deviated downward substantially — from $2,200 per month to $800 per month — because "[husband] is taking on a substantially larger portion of the marital debt post-decree."

### III. Maintenance

¶ 30     Husband further contends that the district court abused its discretion or otherwise made insufficient findings when awarding wife $800 per month in maintenance.  We again disagree.

¶ 31     We review the district court's maintenance award for an abuse of discretion.  *Balanson*, 25 P.3d at 35.  Although the court must follow the statutory process and consider the relevant factors in section 14-10-114(3), C.R.S. 2024, it need not make specific factual findings on each factor, so long as its findings are "sufficiently explicit . . . to give the appellate court a clear understanding of the basis of its order."  *Wright*, ¶ 20 (citation omitted).

¶ 32     In awarding wife $800 per month in maintenance, the district court considered the parties' respective incomes and generally credited the expenses reflected in wife's sworn financial statement, which the court found demonstrated a need for maintenance. Conversely, the court found that husband's sworn financial statement, which reported a monthly shortfall of more than $3,000 per month, was not credible.  In particular, it found that husband's unexplained $2,450 monthly vehicle payment and $3,300 in combined monthly dining and grocery expenses were excessive.

¶ 33    The court also noted that it had limited evidence concerning the parties' marital lifestyle and recognized that both parties were relatively young and capable of working well into the future.

¶ 34    The district court then considered the guideline maintenance amount of $2,200 per month but expressed concern about husband's ability to pay that amount given the significant debts he had been allocated. The court therefore deviated downward from the maintenance guidelines based upon those debts.

¶ 35    Given the district court's detailed findings, we are satisfied that the court considered all relevant statutory factors when awarding wife maintenance. *See Wright*, ¶¶ 12-17. And we disagree with husband's suggestion that the district court did not consider the unequal property division when awarding wife maintenance, given that the district court specifically deviated downward from the guideline amount of maintenance by $1,400 per month in recognition of the substantial debt allocated to him.

¶ 36    Finally, we reject husband's contention that the district court failed to account for an unspecified increase in his expenses arising from his refinance of the marital home as part of the marital property division. Husband does not cite, and we have not found,

anywhere in the record where he presented this argument to the district court. Nor does husband identify any evidence in the record to support his insinuation that he could not afford any resulting increased financial obligation. *See Krejci*, ¶ 23 (holding that parties' failure to present sufficient evidence to the court does not provide grounds for reversal); *Brighton Sch. Dist. 27J v. Transamerica Premier Ins. Co.*, 923 P.2d 328, 335 (Colo. App. 1996) ("[I]t is not the duty of the reviewing court to search the record for evidence to support bald assertions."), *aff'd*, 940 P.2d 348 (Colo. 1997).

IV.  Appellate Attorney Fees

¶ 37    Wife requests an award of her appellate attorney fees under section 13-17-102, C.R.S. 2024, on the ground that husband's appeal lacks substantial justification. We deny this request. Although husband did not prevail, his appeal was not so lacking in substantial justification as to warrant an award of attorney fees. *See In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases when the appellant presents no rational argument, or the appeal is prosecuted for the purpose of harassment or delay."), *aff'd*, 2019 CO 81.

¶ 38    Wife also requests her appellate attorney fees under section 14-10-119, C.R.S. 2024. Because the district court is better equipped to resolve the factual issues regarding the parties' current financial resources, we remand for the district court to consider wife's request. *See In re Marriage of Alvis*, 2019 COA 97, ¶ 30.

## V.    Disposition

¶ 39    The judgment is affirmed and the case is remanded for further proceedings concerning wife's request for appellate attorney fees.

JUDGE FREYRE and JUDGE SULLIVAN concur.