24CA1813 Marriage of Tafolla 08-21-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1813
El Paso County District Court No. 23DR30649
Honorable Monica J. Gomez, Judge

---

In re the Marriage of

Aaron Andrew Tafolla,

Appellant,

and

Lisa Marie Tafolla,

Appellee.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE HARRIS
Fox and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 21, 2025

---

Law Office of Greg Quimby, P.C., Greg Quimby, Erica Vasconcellos, Colorado Springs, Colorado, for Appellant

The Byrnes Law Firm, Laurel Meyers Byrnes, Theodore D'Arcy, Jim Yontz, Colorado Springs, Colorado, for Appellee

¶ 1     In this dissolution of marriage case between Aaron Andrew Tafolla (father) and Lisa Marie Tafolla (mother), father appeals those portions of the permanent orders concerning parenting time, maintenance, child support, and the allocation of the children's extraordinary expenses.  We affirm the portion of the permanent orders concerning mother's supervised parenting time but reverse the portion of the permanent orders concerning mother's unsupervised digital and telephone contact with the children.  We also reverse the district court's awards of maintenance and child support and its allocation of extraordinary expenses.  We remand the case for further proceedings.

## I.     Background

¶ 2     The parties married in 2001 and have three children.  In 2023, father petitioned to dissolve the parties' marriage, and mother stipulated to a restriction of her parenting time after she was charged in a separate criminal proceeding with various crimes related to her abuse of father and the children.  To resolve the charges, mother pleaded guilty to misdemeanor harassment and entered into a stipulation for a deferred judgment and sentence.

1

¶ 3    A permanent orders hearing was held in July 2024.  In the resulting permanent orders, the district court awarded father sole decision-making responsibility and allowed him to relocate with the children to Hawaii.  Mother requested reunification therapy, although she did not seek any parenting time.  The court denied mother's request for reunification therapy but awarded her supervised parenting time once per month in Hawaii.  The court also awarded her "reasonable telephone/digital contact" with the children three times per week.

¶ 4    After dividing the marital estate, which primarily consisted of over $260,000 in debt, the district court awarded mother $1,600 per month in maintenance for eleven years.  The court declined to award father any child support.

## II.    Parenting Time

¶ 5    Father first challenges the allocation of parenting time.  We conclude that father invited any error as to mother's supervised parenting time.  But because we are unable to ascertain why the court deemed it in the children's best interests to have unsupervised digital and telephone contact with mother, we reverse

and remand to the district court for further findings on the portion of the permanent orders concerning digital and telephone contact.

## A.  Applicable Law

¶ 6     A district court must allocate parenting time according to the children's best interests, "giving paramount consideration to the child[ren]'s safety and the physical, mental, and emotional conditions and needs of the child[ren]." § 14-10-124(1.5), C.R.S. 2024.  The court must consider the factors in section 14-10-124(1.5)(a)(I)-(XI).  *In re Marriage of Finer*, 920 P.2d 325, 327 (Colo. App. 1996).  The court is not required to make specific findings on all statutory factors.  *In re Marriage of Rodrick*, 176 P.3d 806, 813 (Colo. App. 2007).  However, the court's findings must be sufficiently explicit to give the reviewing court a clear understanding of the factual basis for the order.  *In re Marriage of Gibbs*, 2019 COA 104, ¶ 9; *In re Marriage of Garst*, 955 P.2d 1056, 1058 (Colo. App. 1998) ("Factual findings are sufficient if they identify the evidence which the fact finder deemed persuasive and determinative of the issues raised.").

¶ 7     For a court to "impos[e] . . . a parenting time restriction," the court must find "that parenting time by the [restricted] party would

3

endanger the child[ren]'s physical health or significantly impair the child[ren]'s emotional development" and "enumerate the specific factual findings supporting the restriction," including findings related to child abuse. § 14-10-124(1.5)(a).

¶ 8 We review a district court's parenting time determinations for an abuse of discretion, meaning that we will only reverse if the court acted in a manifestly unfair, arbitrary, or unreasonable manner. *In re Marriage of Collins*, 2023 COA 116M, ¶ 8. We generally review the district court's factual findings for clear error, meaning that we will not disturb them unless they are devoid of record support. *Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12.

### B. Discussion

¶ 9 To start, we reject father's contention that, because of mother's history of child abuse, the district court erred by permitting her to have any parenting time with the children. At the hearing, father's attorney asked father if he wanted mother to "only have supervised parenting time at her expense," and father replied, "[y]es." Consistent with father's wishes, the court awarded mother supervised parenting time in Hawaii, once per month, at her expense.

4

¶ 10    Accordingly, we conclude that father's contention of error concerning mother's supervised parenting time is barred by the doctrine of invited error because the permanent orders implemented his own request as to mother's parenting time. *See In re Marriage of O'Connor*, 2023 COA 35, ¶ 24 (recognizing that "[t]he doctrine of invited error precludes a party from appealing an error that the party invited or injected into the case"); *cf. Horton v. Suthers*, 43 P.3d 611, 619 n.10 (Colo. 2002) (recognizing that invited error merely mandates that the claim of error cannot be considered but does not suggest that actual error occurred).

¶ 11    Father also contends that the district court abused its discretion by permitting mother to have unsupervised digital and telephone contact with the children. We conclude that further proceedings are necessary because we are unable to tell what information the district court found relevant when deciding that it was in the children's best interests to have unsupervised contact with mother. *See Gibbs*, ¶ 9.

¶ 12    The district court found that mother had a history of verbally, emotionally, and physically abusing the children, which included "coercive control" of them. The court explained that "[t]he

testimony concerning [m]other's abuse of the children and the videos presented [at the hearing] [were] horrific" and found that mother's "need to rage at the children t[ook] precedence over her relationship with them." Such verbal abuse included "belittling and threatening the children" and calling one the children a "worthless orphan child."

¶ 13  Yet, despite these extensive findings concerning mother's verbal abuse, the district court, without further explanation, allowed mother to have unsupervised telephone and digital contact with the children. Accordingly, we cannot determine why the court concluded that unsupervised contact with mother was in the children's best interests. *See id.*

¶ 14  We therefore reverse the portion of the permanent orders concerning mother's digital and telephone contact with the children and remand for the district court to re-address that issue. *See In re Marriage of Goodbinder*, 119 P.3d 584, 587 (Colo. App. 2005) (requiring remand where the district court did not include in its order any factual findings or legal conclusions that would enable the appellate court to understand the basis of its order and, accordingly, whether the court abused its discretion). Because the

permanent orders were entered almost a year ago, the district court should receive additional evidence on remand concerning the children's current circumstances and then make appropriate factual findings regarding the type of contact authorized between mother and the children. *See In re Parental Responsibilities Concerning M.W.*, 2012 COA 162, ¶ 27. The current parenting time orders shall remain in effect pending the additional findings and orders on remand. *See id.*

### III.   Maintenance

¶ 15   Father next challenges the award of $1,600 per month in maintenance to mother. Because we agree that the district court, at least in part, based the maintenance award on improper speculation that father could consolidate or otherwise obtain relief from his significant debt, we reverse the maintenance award and remand for further proceedings.

### A.   Preservation

¶ 16   We first reject mother's contention that this issue was not preserved because "[t]he Rules provide for an objection to proposed orders," and father did not file such an objection in the district court. At no point did either party file a proposed version of the

permanent orders, and instead, the court indicated that it would issue its own written permanent orders. Moreover, "a party is not required to object to the trial court's findings in the trial court to preserve a challenge to those findings." *People in Interest of D.B.*, 2017 COA 139, ¶ 30. We thus consider the substance of father's contentions.

## B. Applicable Law

¶ 17    The district court has broad discretion in deciding the amount and duration of a maintenance award, and, absent an abuse of that discretion, we will not reverse its decision. *See* § 14-10-114(2), (3)(e), C.R.S. 2024; *In re Marriage of Vittetoe*, 2016 COA 71, ¶ 14.

¶ 18    Under section 14-10-114(3), the court must follow a specific process when awarding maintenance. *In re Marriage of Wright*, 2020 COA 11, ¶ 13. "[T]he court must first make written or oral findings on each party's gross income, the marital property apportioned to each party, each party's financial resources, the reasonable financial need as established during the marriage, and the taxability of the maintenance awarded." *In re Marriage of Herold*, 2021 COA 16, ¶ 25; *see also* § 14-10-114(3)(a)(I).

¶ 19     Next, the court must determine the amount and term of maintenance, if any, that is equitable after considering the statutory advisory guidelines and a list of non-exclusive statutory factors.  § 14-10-114(3)(a)(II)(A), (3)(a)(II)(B), (3)(b), (3)(c); *Wright*, ¶ 15.  Finally, before the court is permitted to award maintenance, it must find that the party seeking maintenance lacks sufficient property, including marital property apportioned to them, to provide for their reasonable needs and is unable to support themself through appropriate employment.  § 14-10-114(3)(a)(II)(C), (3)(d).

¶ 20     The district court must "make specific written or oral findings in support of the amount and term of maintenance awarded."  § 14-10-114(3)(e); *see also Gibbs*, ¶ 9; *Garst*, 955 P.2d at 1058.

## C.    Discussion

¶ 21     In determining maintenance, the court found that father earned $8,861 per month, whereas mother only earned $3,144 per month.  Based on the parties' respective incomes, the district court found that the guideline amount of maintenance was $3,649 per month from father to mother.  However, the court acknowledged that, given the approximately $121,000 in unsecured debt allocated

9

to father, with monthly payments totaling almost $3,000, father did not have the ability to pay the guideline maintenance amount.

¶ 22 The court appeared to credit father's sworn financial statement showing that, even before any maintenance obligation, he had a monthly budgetary shortfall of approximately $4,000. But the court then opined that "[s]hould [f]ather file for bankruptcy or manage his debt through a debt consolidation program, his financial picture will improve dramatically." After finding that mother lacked the financial resources to support herself, the court concluded that father "has the financial resources to pay spousal maintenance" and ordered him to pay mother $1,600 per month based "on a totality of [the] circumstances."

¶ 23 We agree with father that the court's speculation about his ability to consolidate or otherwise eliminate his debt was improper because "[a]wards of maintenance must be based upon the parties' needs and circumstances at the time of the hearing, rather than upon their past or future conditions." *In re Marriage of Simon*, 856 P.2d 47, 51 (Colo. App. 1993); *see also In re Marriage of Folwell*, 910 P.2d 91, 93 (Colo. App. 1995) (recognizing that maintenance should not be based on "speculation about future conditions"). Here, there

was no testimony or other evidence concerning father's ability or intention to obtain future debt relief via bankruptcy or debt consolidation. Consequently, the district court's observation that father could improve his finances, and thus his ability to pay maintenance, by filing for bankruptcy or consolidating debt was unsupported speculation about his future financial conditions. *See Simon*, 856 P.2d at 51; *Folwell*, 910 P.2d at 93. Therefore, we reverse the maintenance award and remand for the district court to reconsider mother's request for maintenance.

## IV. Child Support and Remand Instructions

¶ 24    Maintenance and child support are "inextricably intertwined," *In re Marriage of Salby*, 126 P.3d 291, 301 (Colo. App. 2005), and because we are reversing the maintenance award, we also reverse the portion of the permanent orders determining child support. Because the district court will need to reconsider child support, we decline to address father's contention that the district court erred by awarding him no child support.

¶ 25    In determining both maintenance and child support on remand, the district court must base its orders on the parties' economic circumstances at the time of remand. *In re Marriage of*

11

*Kann*, 2017 COA 94, ¶ 79 (maintenance is based on the parties' financial situations when an order is entered); *In re Marriage of Berry*, 660 P.2d 512, 513 (Colo. App. 1983) (directing court on remand to determine the needs of the children at the time of the hearing). Therefore, the district court should direct the parties to produce updated disclosures, *see* C.R.C.P. 16.2(e)(1), (4), and allow them to present additional evidence on their present economic circumstances. *Cf. Salby*, 126 P.3d at 301 (parties on remand should be given a full opportunity to present all relevant evidence affecting child support and maintenance).

¶ 26 The district court must make sufficiently explicit findings of fact to give us a clear understanding of the basis of its orders, *see Gibbs*, ¶ 9, including specific findings in support of any deviation from the child support guidelines, *see* § 14-10-115(8)(e), C.R.S. 2024.

V. Payment of the Children's Extraordinary Expenses

¶ 27 We also agree with father that the district court erred by allocating "extraordinary medical and agreed-upon extracurricular activity expenses in proportion to income," with mother being responsible for nine percent and father being responsible for ninety-

two percent of expenses. In addition to the fact that the sum of the percentages calculated by the court exceeds 100%, we are unable to ascertain how the court determined that father was ninety-two percent responsible and mother was nine percent responsible given that the court found that the parties earned $8,861 per month, and $3,144 per month, respectively. *See Gibbs*, ¶ 9; § 14-10-115(5)(I)(Y), (10)(h)(I) (requiring extraordinary medical expenses to be divided between the parties in proportion to their "adjusted gross incomes," which includes maintenance, subject to certain adjustments).

¶ 28 Accordingly, we reverse the portion of the permanent orders allocating the children's extraordinary expenses and direct the district court to reconsider that allocation on remand.

## VI. Discovery Issues

¶ 29 Because both parties will be required to update their financial disclosures as part of the district court's consideration of their current economic circumstances on remand, we decline to consider father's additional contentions that the district court erred by (1) failing to rule on his motion to compel mother to produce certain financial documents, and (2) failing to make negative inferences

13

against mother when determining maintenance and child support because of her failure to produce certain documents.

## VII.  Attorney Fees

¶ 30     Father requests an award of his appellate attorney fees under section 14-10-119, C.R.S. 2024, which allows a court to equitably apportion, based on a disparity in the parties' financial resources, attorney fees in a dissolution of marriage proceeding.  But father has not identified any disparity in the parties' financial circumstances which would warrant an award of attorney fees in his favor.  *See* C.A.R. 39.1 (requiring a party seeking attorney fees on appeal to "explain the legal and factual basis for an award of attorney fees").  We thus deny his request.

## VIII.  Disposition

¶ 31     The portion of the permanent orders concerning mother's supervised parenting time is affirmed.  Those portions of the permanent orders concerning mother's digital and telephone contact with the children, maintenance, child support, and the allocation of the children's extraordinary expenses are reversed, and the case is remanded for further proceedings consistent with this

14

opinion.  Those portions of the judgment not challenged on appeal remain undisturbed.

JUDGE FOX and JUDGE SCHUTZ concur.