24CA1875 Parental Resp Conc CJR 09-18-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1875
City and County of Denver District Court No. 19DR30638
Honorable Jennifer B. Torrington, Judge
Honorable Angela Boykins, Magistrate

---

In re the Parental Responsibilities Concerning C.J.R. and E.J.R., Children,

and Concerning Andria Lundquist,

Appellant,

and

Jeremy Raile,

Appellee.

---

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE LIPINSKY
Dunn and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 18, 2025

---

The Demkowicz Law Firm, LLC, Danielle L. Demkowicz, Centennial, Colorado, for Appellant

Jeremy Raile, Pro Se

¶ 1    Andria Lundquist (mother) appeals the district court's order adopting the magistrate's decision that mother interfered with Jeremy Raile's (father) parenting time and sanctioning her for that interference. We affirm the order in part, reverse it in part, and remand the case to the district court.

## I.    Background

¶ 2    The parties have two children, C.J.R. and E.J.R. In December 2019, the district court allocated parental responsibilities in accordance with the parties' agreement that mother and father would have equal parenting time. In April 2022, mother filed a verified motion regarding parenting time disputes in which she alleged that the children had been missing school during father's parenting time. Mother later moved to restrict father's parenting time because of father's ongoing alcohol use.

¶ 3    Following a child and family investigator's report, the parties entered into a memorandum of understanding (MOU) providing that both parents would submit to sobriety testing before and after their respective parenting time. The court adopted the MOU as a court order in May 2023.

1

¶ 4　　In June 2023, mother told father that she would not allow him to have further parenting time with the children because he had violated the MOU by missing a sobriety test.  Mother, however, did not file a motion to restrict father's parenting time under section 14-10-129(4), C.R.S. 2025.

¶ 5　　About six weeks later, father, who did not have an attorney at the time, filed a verified motion concerning parenting time disputes under section 14-10-129.5, C.R.S. 2025, and a motion for contempt.  A magistrate denied father's motion for contempt and referred his parenting time motion for mediation.  Father filed a second motion concerning parenting time disputes in October 2023.

¶ 6　　The magistrate conducted a hearing on father's parenting time motions in May 2024 and, after hearing the parties' evidence, found that mother had interfered with father's parenting time.  The magistrate concluded that, under the MOU, mother initially had reason to restrict father's parenting time because of his missed sobriety test, but that the court was unable to conduct an expedited hearing on the matter because mother had not filed a motion to restrict, as section 14-10-129(4) requires.  Noting that, as a consequence of mother's actions, father had no contact with the

children for nearly a year, the magistrate ordered a ramp-up of father's parenting time, immediate phone and video calls between father and the children, and family therapy for father and the children at mother's expense. The magistrate also provided a procedure for choosing the family therapist: the parties would confer regarding a family therapist within seven days and, if they could not agree, father would select the therapist. The magistrate further ordered makeup parenting time for father.

¶ 7   Mother petitioned for review of the magistrate's decision. The district court denied mother's petition and adopted the magistrate's order.

## II.   Standard of Review

¶ 8   When, as here, we review a district court's order reviewing a magistrate's order, we must accept the magistrate's factual findings unless they are clearly erroneous. *See In re Parental Responsibilities Concerning G.E.R.*, 264 P.3d 637, 639 (Colo. App. 2011); *see also* C.R.M. 7(a)(9) (a magistrate's findings of fact may not be altered unless clearly erroneous). Our review of the district court's decision is effectively a second layer of appellate review; we apply the same clearly erroneous standard to the magistrate's

3

findings as does a district court. *G.E.R.*, 264 P.3d at 638-39. Factual findings are not clearly erroneous unless there is no support for them in the record. *Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12, 292 P.3d 1201, 1204.

¶ 9    We review questions of law de novo, including whether the court applied the proper legal standard and correctly interpreted the MOU. *See In re Marriage of Young*, 2021 COA 96, ¶ 9, 497 P.3d 524, 528; *Neher v. Neher*, 2015 COA 103, ¶ 33, 402 P.3d 1030, 1035. The court's discretion over parenting issues is broad and we exercise every presumption in favor of its decision. *In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007).

### III.    Interference with Parenting Time

¶ 10    Mother first argues that the district court (and before it, the magistrate) erred when it found that she interfered with father's parenting time. Specifically, she asserts that the MOU allowed her to immediately restrict father's parenting time for a violation of the MOU and did not require her to file a motion before doing so. We hold that mother was required to file a motion to restrict under section 14-10-129(4) and, thus, the district court did not err.

4

## A. The Court's Findings

¶ 11 The MOU outlined several specific ways that father and mother were to establish their sobriety before and after parenting time. The MOU defined a "positive sobriety test" as one that is "positive, missed, dilute, adulterated, or delayed." The MOU also contained the following provision:

> The parties agree that in the event of a positive sobriety test (as defined in the testing protocol . . .), the positive test shall constitute the basis for an immediate emergency restriction of parenting time pending an evidentiary hearing by the Court as provided under [section] 14-10-129(4).

¶ 12 The magistrate found that, on more than one occasion from the end of May to early June 2023, father did not precisely conform to the testing protocol outlined in the MOU and, thus, had a positive sobriety test under the MOU each time. The magistrate further found that, in response, mother informed father that she would not allow him to exercise *any* parenting time. Moreover, mother's counsel had advised her to call law enforcement if father attempted to exercise parenting time. (We note that mother's refusal to allow father to speak with the children by telephone also violated section 7 of the MOU.) The magistrate also found that,

5

although the MOU provided that a positive test constituted the basis for an emergency restriction of parenting time, mother later interfered with father's parenting time by not filing a motion to restrict under section 14-10-129(4).

¶ 13    Further, the magistrate found it was not up to father to schedule his own evidentiary hearing, as mother contended. The magistrate rejected mother's assertion that the court should have set a hearing sua sponte, reasoning that it was not "going to be involved in the parties' life" and "wouldn't have known" about mother's actions absent the filing of a motion. Accordingly, the magistrate determined that mother was required to file a motion if she wished to restrict father's parenting time and that she interfered with father's parenting time when she did not do so.

## B.    Discussion

¶ 14    On appeal, mother asserts that the district court erred because, other than finding that mother failed to file a motion to restrict under section 14-10-129(4), its order, like the magistrate's order, lacks specific findings about how mother interfered with father's parenting time. But it is not clear to us, nor does mother explain, what further facts the district court needed to find.

¶ 15    The district court noted that the MOU contemplated mother's initial restriction and provided the basis for an emergency restriction of parenting time pending a hearing. However, it concluded that mother did not take the next step of moving to restrict father's parenting time so the court could hold the hearing. For nearly a year, mother continued to tell father that he was not allowed to see the children and that she would call law enforcement if he tried to do so. It is undisputed that father did not have any contact with the children after June 2023. Accordingly, no additional facts were necessary to support the court's determination that mother interfered with father's parenting time. *See* § 14-10-129(4) (requiring a parent who believes that his or her children are in imminent danger due to parenting time to file a motion to restrict that time).

¶ 16    To the extent mother asserts that father's filing of a verified motion regarding parenting time disputes under section 14-10-129.5 remedied her failure to file a motion to restrict under section 14-10-129(4), we disagree. Motions to restrict parenting time filed under section 14-10-129(4) are decided in an expedited manner; they "shall be heard and ruled upon by the court not later

7

than fourteen days" after filing. However, a court has more time — thirty-five days — to take action on a section 14-10-129.5 motion and is not required to set a hearing on the motion. Rather, it may deny such a motion, refer the matter for mediation, or hold a hearing. Indeed, the magistrate referred father's section 14-10-129.5 motion for mediation and, when that proved unsuccessful, set a hearing on it. The magistrate did not hear and rule on father's motion under section 14-10-129.5 for nearly a year.

¶ 17    Because of the expedited nature of motions to restrict parenting time under section 14-10-129(4), and the MOU's explicit mention of that statute, we cannot agree that father's separate motion under 14-10-129.5 absolved mother of the requirement to file a section 14-10-129(4) motion after she restricted father's parenting time following his positive sobriety test.

¶ 18    We are also unpersuaded by mother's assertion that she could not ask for an evidentiary hearing on father's behalf because her counsel does not represent father. Neither the MOU nor the statute contemplates that a party's counsel will file a motion on another party's behalf. Under mother's interpretation, a parent could never file a motion to restrict under section 14-10-129(4) because it would

8

be "on the other parent's behalf." We decline to interpret the statute or the MOU in this way. *See In re Marriage of Roosa*, 89 P.3d 524, 528 (Colo. App. 2004) ("We presume that the legislature intends a just and reasonable result when it enacts a statute, and we will not read a statute to provide an unreasonable or absurd result.").

¶ 19 Nor are we persuaded by mother's assertion that the court, and not the moving parties, must set an evidentiary hearing on restricting parenting time. Mother's interference with father's parenting time did not stem from her failure to "set" an evidentiary hearing under section 14-10-129(4), but, rather, from her failure to file anything with the court after mother restricted father's parenting time. As the district court aptly noted, without a motion first being filed, the court would not know if a restriction was occurring or "get involved" in the parties' lives and set a hearing on the restriction.

## IV. Sanctions

### A. Applicable Law

¶ 20 Section 14-10-129.5 governs disputes over parenting time. If, after a hearing, the district court finds that a parent has not

complied with a parenting time order or schedule, the court shall enter an order sanctioning the noncompliant parent. § 14-10-129.5(2). Such sanctions may include, as relevant here, an order requiring that makeup parenting time be provided to the aggrieved parent, or any other order promoting the children's best interests. § 14-10-129.5(2)(d); *In re Parental Responsibilities Concerning W.F-L.*, 2018 COA 164, ¶ 12, 433 P.3d 168, 170. And the court may make "[a]ny other order that may promote the best interests of the . . . children involved." § 14-10-129.5(2)(h).

## B. Makeup Parenting Time

¶ 21 Mother argues that the magistrate (and, later, the district court) erred by ordering makeup parenting time for father. Although we hold that the magistrate did not err by ordering makeup parenting time in general, the order is unclear regarding the number of days of makeup parenting time. For this reason, we reverse the makeup parenting time order and remand the case for clarification of this point.

¶ 22 Mother first asserts that father waived any request for makeup parenting time because he did not ask for it in his section 14-10-129.5 parenting time disputes motion. Although true, father

was acting pro se at the time and filed a contemporaneous contempt motion in which he sought makeup parenting time. Moreover, father requested makeup parenting time in his trial management certificate. And mother does not claim she was unaware that father was seeking makeup parenting time, or that she was surprised or unable to present evidence on this issue at the hearing. Thus, we cannot agree that father waived any request for makeup parenting time or that his failure to request it in his motion prejudiced mother.

¶ 23 To the extent that mother asserts that the magistrate did not have the general authority to order makeup parenting time, we disagree. *See* § 14-10-129.5(2)(b), (d), (f), (h). However, we agree that the magistrate's order regarding the amount of makeup parenting time is unclear, and the magistrate must clarify this amount on remand.

¶ 24 The magistrate's written order contained the following provision:

> Father shall have makeup Parenting Time from June 12, 2023 – May 20, 2024, or 34 days. Parenting Time was 50-50, so father's make up time shall be 172 days. Father's make up Parenting Time shall be taken at no more than

> 3 days each week, shall not include a holiday unless missed between June 12, 2023 – May 20, 2024, and shall not begin until Parenting Time returns to week on/week off.

¶ 25 From the face of the order, it is unclear whether the magistrate ordered 34 or 172 days of makeup parenting time. The district court did not clarify this provision when it adopted the magistrate's order. If the magistrate meant to order 172 days of makeup parenting time, then it is unclear how father could achieve that time because the magistrate also ordered that makeup parenting time could not begin until the ramp-up to 50-50 parenting time was complete — four months, according to the court's schedule. Moreover, the magistrate ordered that father could not take more than three makeup days each week. Accordingly, it is unclear how father could make up 172 days, given that makeup parenting time must occur within a year from the order. *See* § 14-10-129.5(d)(II).

¶ 26 Mother also asserts that father is not entitled to make up parenting time because he stopped providing sobriety tests between June 6, 2023, and April 26, 2024. Although we disagree that this fact prevented the magistrate from ordering any makeup parenting time, on remand, the court must determine if father is eligible for

12

makeup parenting time for this period or if he missed parenting time voluntarily by not continuing the testing protocol and, therefore, is not entitled to makeup parenting time for this period.

### C. Family Therapy

¶ 27 To the extent mother generally contends that the magistrate (and later, the district court) lacked authority to order family therapy for father and the children and to order her to pay for it, we disagree. *See* § 14-10-129(2)(b.3), (b.7) (allowing the court to order a noncomplying parent to bear the expense of parental education or family therapy as a sanction for interference with parenting time); § 14-10-129.5(2)(h) (providing that the court may enter any other order promoting the best interests of the children); *see also In re Marriage of Yates*, 148 P.3d 304, 317 (Colo. App. 2006) (holding that it was in the best interests of the children for one party to participate in anger management counseling).

¶ 28 Mother also argues that father waived family therapy as a sanction because, in his motion, he did not ask the court to modify decision-making or the parties' financial provisions regarding the children's expenses. However, father requested family therapy in his trial management certificate, and again, mother does not assert

13

that she was surprised by father's request for family therapy or was unable to address it at the hearing.

¶ 29    Nor do we perceive that the magistrate or the district court generally modified the parties' agreements regarding decision-making or financial provisions. Rather, the magistrate found that parenting time with father was in the children's best interests, but that father and the children needed time to get to know each other again. It therefore ordered family therapy between father and the children and ordered mother to pay for the family therapy. It also set forth a procedure for selecting the family therapist that required the parties to confer on a therapist, but, if the parties could not agree, provided that father would choose the therapist. We do not perceive, and mother does not explain, how this order related to family therapy altered the court's prior orders related to decision-making and financial provisions.

¶ 30    Mother also asserts that the court needed to consider section 14-10-131, C.R.S. 2025, when modifying decision-making responsibility, as section 14-10-129.5(2)(f) requires. But for the reasons discussed above, we do not agree that the discrete family therapy order generally modified decision-making responsibilities.

¶ 31    Lastly, mother contends that the magistrate (and later, the district court) erred by not following section 13-22-313(1), C.R.S. 2025, which prohibits a court from ordering "any ancillary form of alternative dispute resolution" when one party claims to be the victim of physical or psychological abuse. But mother did not present this argument to the district court in her petition for review of the magistrate's decision, and we will not consider it for the first time on appeal. *See People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006) (holding that a party appealing a magistrate's decision must raise the particular issue in the district court, thereby allowing the district court to correct any error, before raising the issue on appeal).

## V.    Disposition

¶ 32    We reverse the portion of the district court's order addressing the amount of makeup parenting time and remand to the district court for further proceedings consistent with this opinion; otherwise, the judgment is affirmed.

JUDGE DUNN and JUDGE KUHN concur.

15